No. 97-718

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 219

CITY OF CUT BANK, STATE OF MONTANA,

Plaintiff and Appellant,

v.

TOM PATRICK CONSTRUCTION, INC.,

Defendant and Respondent.

APPEAL FROM: District Court of the Ninth Judicial District,

In and for the County of Glacier,

The Honorable Marc G. Buyske, Judge presiding.


COUNSEL OF RECORD:


For Appellant:


Robert G. Olson; Frisbee, Moore & Olson, Cut Bank, Montana


For Respondent:


Brian Lilletvedt; Bosch, Kuhr, Dugdale, Martin & Kaze, Havre, Montana


Submitted on Briefs: May 28, 1998

Decided: September 3, 1998

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶ **City of Cut Bank (Cut Bank) appeals from the decision of the Ninth Judicial District Court, Glacier County, dismissing with prejudice Cut Bank's complaint based upon the United States Supreme Court's decision in Doctor's Associates, Inc. v. Casarotto (1996), 517 U.S. 681, 116 S.Ct. 1652, 134 L.Ed.2d 902 (Casarotto). More specifically, the District Court determined that the transaction between Cut Bank and Tom Patrick Construction (Tom Patrick), which is the basis of the current action, involved interstate commerce and thus must be arbitrated pursuant to the Federal Arbitration Act (FAA). We reverse and remand.**

### Factual and Procedural Background

¶ **Cut Bank entered into a construction contract with Tom Patrick on November 16, 1993. The contract required Tom Patrick to replace a water line in Bum Coulee, construct an access road and stabilize the surrounding coulee and ditch areas. Tom Patrick completed the first two stages-- replacing the water line and constructing the access road. Cut Bank, however, contends that the riprap materials used by Tom Patrick in the stabilization stage of the construction were insufficient to complete the project to specifications.**

¶ **Cut Bank made several requests that Tom Patrick complete the project in accordance with the contract but eventually hired the services of another contractor to complete the project according to specifications. Completion of the project was more costly than the original contract price. Cut Bank refused to the make final payment due to Tom Patrick under the contract and refused to**

surrender Tom Patrick's bond and performance bond.

¶ As a result, Tom Patrick served Cut Bank with a notice of intent to arbitrate the dispute. Cut Bank objected to arbitration proceedings, asserting that no valid contract for arbitration existed because the construction contract did not comply with § 27-5-114(4), MCA (1993), which required that notice that a contract is subject to arbitration be typed in underlined capital letters on the front page of the contract. Cut Bank filed a complaint in District Court seeking a stay of arbitration. Tom Patrick dismissed the arbitration proceedings and requested that the District Court stay further proceedings pending the resolution of the challenge to § 27-5-114, MCA, in Casarotto. The District Court granted the stay.

¶ The United States Supreme Court issued its decision in Casarotto (1996), 517 U.S. 681, 116 S.Ct. 1652, 134 L.Ed.2d 902, determining that § 27-5-114(4), MCA, was preempted by the FAA. Thereafter, Tom Patrick moved to dismiss Cut Bank's complaint for failure to state a cause of action. Cut Bank responded that the FAA was not applicable to the construction contract because the contract did not involve interstate commerce. The District Court, citing Casarotto, dismissed Cut Bank's complaint with prejudice. Cut Bank appeals to this Court presenting three issues for review. We determine that the issue of whether the complaint alleges an underlying contract involving interstate commerce is dispositive and therefore do not reach the remaining issues.

### Standard of Review

¶ Our standard of review of district court rulings on motions to dismiss under Rule 12(b)(6), M.R. Civ.P., is set forth in Willson v. Taylor (1981), 194 Mont. 123, 634 P.2d 1180:

> A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. A motion to dismiss under Rule 12(b)(6), M.R.Civ.P., has the effect of admitting all well-pleaded allegations in the complaint. In considering the motion, the complaint is construed in the light most favorable to the plaintiff, and all allegations of fact contained therein are taken as true.

Willson, 194 Mont. at 126, 634 P.2d at 1182 (citations omitted). The District Court's determination that Cut Bank's complaint failed to state a claim is a conclusion of law. Our standard of review of the trial court's conclusions of law is whether the tribunal's interpretation of the law is correct. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603.

### Discussion

¶ Congress, in enacting the FAA, sought to foreclose state legislative attempts to

undercut the enforceability of arbitration agreements. The United States Supreme Court has explained that § 2 of the FAA reflects a strong national policy favoring arbitration agreements. Perry v. Thomas (1987), 482 U.S. 483, 107 S.Ct. 2520, 96 L. Ed.2d 426. As a result of this strong policy, agreements to arbitrate will be upheld under the FAA unless the agreement is not part of a contract evidencing interstate commerce or is revocable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

¶ Recognizing that many contracts provide little warning to parties that a contract is subject to arbitration, the Montana legislature enacted § 27-5-114(4), MCA. That section required that notice that a contract was subject to arbitration be printed in capitalized underlined print on the front of the contract. In so providing, the legislature sought to ensure that parties to a contract were aware, when they signed a contract subject to an arbitration clause, that they were waiving their constitutional right to access the courts. The legislature sought to prevent parties from waiving that right without their full knowledge.

¶ Specifically, § 27-5-114(4), MCA, stated that "notice that a contract is subject to arbitration pursuant to this chapter shall be typed in underlined capital letters on the first page of the contract; and unless such notice is displayed thereon, the contract may not be subject to arbitration." This section (since repealed) was in effect in November 1993, at the time that Cut Bank entered into the construction contract with Tom Patrick. The construction contract did not comply with the notice requirement of § 27-5-114(4), MCA. Rather, Section 16.1, located in the Standard General Conditions on page 110 of the Contract Documents, stated that "[a]ll claims, disputes and other matters in question between [Cut Bank] and [Tom Patrick] arising out of or relating to the Contract Documents or the breach thereof . . . will be decided by arbitration . . . ." At the District Court, Cut Bank contended that this provision does not comply with the requirements of § 27-5-114(4), MCA, therefore that the agreement to arbitrate is not enforceable. Tom Patrick, on the other hand, maintained that this action is controlled by the United States Supreme Court's decision in Casarotto.

¶ The United States Supreme Court, in Casarotto, held that Montana's first-page notice requirement found at § 27-5-114(4), MCA, conflicted with the FAA and was therefore preempted by the federal law. Specifically, the Supreme Court explained that "[c]ourts may not . . . invalidate arbitration agreements under state laws

applicable only to arbitration provisions." Casarotto, 116 S.Ct. at 1656. Instead, the arbitration provisions must be treated like any other contract and may only be invalidated "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

¶ Cut Bank asserts that this action is distinguishable from Casarotto because the transaction in this case does not involve interstate commerce. Specifically, Cut Bank maintains that this case is purely local, that it does not involve interstate commerce, and therefore that the FAA does not apply. Accordingly, the sole issue presented to this Court is whether the complaint alleges a contract involving interstate commerce, thereby invoking the FAA, or whether the contract is purely local and outside the purview of the FAA.

¶ The District Court stated, in its order dismissing Cut Bank's complaint, that "from a review of the undisputed facts, . . . this matter . . . involve[s] interstate commerce." As explained above, a motion to dismiss the complaint for failure to state a claim has the effect of admitting all well-pleaded allegations in the complaint. The complaint is construed in the light most favorable to the plaintiff and all allegations of fact contained in the complaint are taken as true. Willson, 194 Mont. at 126, 634 P.2d at 1182.

¶ Cut Bank's complaint alleges that it is a municipal corporation created and existing pursuant to the laws of the State of Montana, that Tom Patrick is a corporation organized and doing business in Montana, and that the contract entered into by the parties involved work to be performed in Montana. Since the District Court's order does not specify the basis for its conclusion that the matter involved interstate commerce, we cannot determine the District Court's underlying rationale. In any event, we review a district court's conclusions of law to determine whether the court correctly interpreted the law. A review of the complaint, when viewed in the light most favorable to Cut Bank, reveals that the construction contract as alleged in the complaint was a local transaction that did not involve interstate commerce. The District Court incorrectly dismissed Cut Bank's complaint pursuant to Casarotto.

¶ Pursuant to the Commerce Clause of the United States Constitution, Congress has the power to regulate commerce among the states. U.S. Const. art. I, § 3. In United States v. Lopez (1995), 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626, the United States Supreme Court explained that there are three broad categories of activities

that Congress can regulate pursuant to its commerce power: the use of channels of interstate commerce, the regulation and protection of the instrumentalities of interstate commerce, and those activities having a substantial relation to interstate commerce. Lopez, 514 U.S. at 558-59. The construction contract at issue in this case does not entail use of the channels of interstate commerce nor regulation and protection of the instrumentalities of interstate commerce. Thus, unless the contract has a substantial relation to interstate commerce, it is not regulated by federal law.

¶ The Court in Lopez further clarified that, with respect to the third category, the proper test for determining whether an activity has a substantial relation to interstate commerce requires an analysis of whether the regulated activity "substantially affects" interstate commerce. Lopez, 514 U.S. at 559. The Court explained that there are no precise formulations; rather, the question of congressional power under the Commerce Clause is "necessarily one of degree." Lopez, 514 U.S. at 566-67. In determining the degree of power Congress sought to exercise over a particular activity, the Supreme Court looks to the language of the congressional act. Most statutes passed by Congress which seek authority pursuant to its Commerce power include a jurisdictional element prescribing such power. The jurisdictional element found in § 2 of the FAA, which was absent from the relevant statute in Lopez, ensures a case by case inquiry of whether the activity is one "involving [interstate] commerce." 9 U.S.C. § 2.

¶ Specifically, the jurisdictional element of § 2 of the FAA allows Congress to regulate contracts "evidencing a transaction involving commerce." 9 U.S.C. § 2. In Allied-Bruce Terminex Co. v. Dobson (1995), 513 U.S. 265, 115 S.Ct. 834, 130 L. Ed.2d 753, the Supreme Court concluded "that the word 'involving' is broad and is indeed the functional equivalent of the word 'affecting.' " Allied-Bruce, 513 U.S. at 273-74. As a result, the Supreme Court determined that in enacting the FAA, Congress intended to exercise its powers under the Commerce Clause to the fullest. Allied-Bruce, 513 U.S. at 277.

¶ In addition, in Allied-Bruce, the Supreme Court clarified that in determining whether a particular transaction falls within the ambit of § 2 of the FAA, the transaction must "in fact" involve interstate commerce. Allied-Bruce, 513 U.S. at 281. In so holding, the Supreme Court specifically rejected a test that focused on the understanding of the parties that a transaction involves interstate commerce. Allied-Bruce, 513 U.S. at 281. The parties in Allied-Bruce did not contest that the

transaction in that case in fact involved interstate commerce. Likewise, in Casarotto, the parties did not contest that the franchise agreement involved interstate commerce. See Casarotto v. Lombardi (1995), 274 Mont. 3, 8, 901 P.2d 596, 598 (indicating that we assumed in that decision that the transaction with which we were concerned involved interstate commerce). In the case at bar, however, the central issue is whether the construction contract involved interstate commerce.

¶ Cut Bank maintains, as it did in its complaint, that it is a municipal corporation created and existing pursuant to the laws of the State of Montana. Tom Patrick is a corporation chartered in the State of Montana with its principal place of business in Havre, Hill County, Montana. Delta Engineering, the other main party to the construction contract, is an engineering firm organized in Montana with its principal place of business in Great Falls, Cascade County, Montana. The construction contract called for work to be performed in Bum Coulee, Montana. All phases of the construction were to occur within the confines of Glacier County, Montana.

¶ In support of its argument that the construction contract involved interstate commerce, Tom Patrick maintains that it was required per the contract to purchase liability insurance which it obtained from Safeco at its area office in Spokane, Washington. In addition, Tom Patrick contends that it purchased performance and payment bonds from National American Insurance Co., located in Boulder, Colorado. Finally, Tom Patrick states that it purchased materials out of state for delivery to Montana.

¶ Tom Patrick's contentions all raise matters outside of the pleadings. In dismissing the complaint, the court was responding to Tom Patrick's motion to dismiss for failure to state a claim upon which relief could be granted under Rule 12(b), M.R.Civ. P. There is no indication in the record that the District Court gave notice that it would consider matters outside the pleadings, thereby converting the Rule 12 motion to a Rule 56 motion for summary judgment. Accordingly, we accept the court's order at face value; that is, that it concluded, based upon the allegations in the complaint and on the information in the attached documents, that the transaction involved interstate commerce and thus the United States Supreme Court's holding in Casarotto was controlling. In ruling on a Rule 12 motion to dismiss, the only relevant document is the complaint and any documents it incorporates by reference. Although the attached contract documents required Tom Patrick to purchase insurance and bonds, neither the complaint nor the attached contracts required Tom Patrick to

purchase bonds or insurance *out of state*. As to the purchase of materials out of state, that too is a matter outside the pleadings. Furthermore, we must assume that the court's decision was not premised on this assertion of fact since it was not undisputed. Cut Bank contends that the materials were purchased from Montana firms and transported by a Montana trucking firm. Even if the court had converted the motion to a Rule 56 motion and considered matters outside the pleadings, it could not issue a summary judgment based upon such disputed facts.

¶ This case was in the pleading stage with only a complaint filed. The District Court order, dismissing Cut Bank's complaint for failure to state a claim, presents no analysis or reasoning in support of its conclusion that this action involves interstate commerce. This Court, after reviewing the pleadings and briefs before it, concludes that the construction contract as alleged in the complaint was a local transaction, not involving interstate commerce, and therefore we hold that the District Court erred when, relying on Casarotto, it dismissed the complaint for failure to state a claim under Rule 12, M.R.Civ.P. We reverse and remand.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ J. A. TURNAGE

/S/ JAMES C. NELSON

/S/ TERRY N. TRIEWEILER

**Justice Karla M. Gray, specially concurring.**

**¶ I concur in the entirety of the Court's opinion on the narrow issue of whether the District Court erred in dismissing Cut Bank's complaint, pursuant to Rule 12(b)(6), M.R.Civ.P., for failure to state a claim. I write separately to briefly address another matter raised by Tom Patrick.**

**¶ In addition to its contentions on the Rule 12(b)(6) issue addressed by the Court, Tom Patrick argues that Cut Bank should be bound by the contract it prepared, which requires submission of disputes to arbitration. The Court does not address this argument, and properly so, since the issue before us involves only Rule 12(b)(6) and, in resolving that issue, we look only to the allegations of the complaint. The question of whether Cut Bank can be held to the provisions of the contract it purportedly prepared and presented to Tom Patrick for execution simply does not fall within the issue presently before us and, therefore, that question is premature at this time. In my view, Tom Patrick can still raise that question via an affirmative defense, a motion for summary judgment or in some other context on remand.**

**/S/ KARLA M. GRAY**