No. 01-023

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 12

BAR OK RANCH, CO.

Plaintiff/Respondent,

v.

VICKI EHLERT, and

TOM FORD, individuals,

Defendants/Appellants.

APPEAL FROM: District Court of the Tenth Judicial District,

In and for the County of Fergus,

The Honorable Richard A. Simonton, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Gary S. Deschenes, Deschenes Law Office, Great Falls, Montana (Vicki Ehlert); Allen
Beck, Allen Beck, P.C., Billings, Montana (Tom Ford)

For Respondent:

David A. Veeder, Veeder Law Firm, Billings, Montana

Submitted on Briefs: August 8, 2001
Decided: January 29, 2002

Filed:

_____

Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Bar OK Ranch Company (Bar OK) filed a complaint against Vicki Ehlert (Ehlert) for breach of contract and trespass in relation to an agricultural lease agreement. Ehlert filed an answer, and later filed a motion to amend her answer, which was eventually denied. Following a settlement conference in March, 1999, Bar OK's president, Ehlert, and Ehlert's father, Tom Ford (Ford), a non-party to the action, entered into a memorandum of understanding (MOU) that settled the dispute and included a provision releasing the parties from all existing claims. However, disagreements between the parties continued, and Bar OK eventually filed a motion to add Ford as a party and to amend its complaint, and motions to enforce the MOU.

¶2 The District Court ruled that the MOU was a valid, enforceable agreement, and allowed Bar OK to add Ford as a party, but limited the scope of Bar OK's amended complaint to recent allegations regarding breach of the MOU. Ehlert filed an answer to the amended complaint as well as a counterclaim, and the District Court subsequently dismissed this counterclaim. Ford also filed an answer and counterclaims to the amended complaint. Ultimately, the District Court entered summary judgment in favor of Bar OK and dismissed Ford's counterclaims. The court later granted Bar OK's motion to dismiss its amended complaint. Ehlert appeals the District Court's ruling on the MOU's validity, and its denial of her motion to amend her first answer. Ford appeals the court's granting of summary judgment, and the dismissal of his counterclaims.

¶3 We restate the issues as follows:

1. Whether the District Court erred when it concluded the memorandum of understanding was a valid and enforceable settlement agreement that released all

claims existing among the signatories to the memorandum of understanding at the time it was executed;

2. Whether the District Court erred when it denied Ehlert's motion to file an amended answer and counterclaim addressed to the original complaint, that she filed prior to negotiation of the memorandum of understanding; and

3. Whether the District Court erred when it granted summary judgment in favor of Bar OK on its motion to dismiss Ford's counterclaims.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 The procedural background of this case is complicated, involves several District Court filings, and spans nearly three years. Ehlert began leasing property from the Bar OK in 1994, and in May of that year, the parties extended the lease and set a new lease expiration date for May 1, 1998. Apparently, Ford assisted Ehlert in managing the land and cattle, and also lived on the premises. This case began in the Summer of 1998, when Bar OK filed a complaint against Ehlert, alleging Ehlert breached the lease agreement when she failed to make the December 1997 payment. Bar OK also alleged Ehlert was required to surrender possession of the property, as the extended lease expired on May 1, 1998. The complaint sought back rent and the right to reenter the premises, as well as other damages.

¶5 On, or about, October 8, 1998, the president of Bar OK, Otto Kuczynski (Kuczynski) forwarded a cashier's check he received from Ford, to Bar OK's counsel. The check was remitted by Ford for the amount of $80,500.00, and was intended to cover Ehlert's past rent. The money was deposited in Bar OK's counsel's law firm trust account while the case was still pending.

¶6 Ehlert filed an answer on November 6, 1998, alleging the past rent had been paid. On November 23, 1998, Bar OK filed a motion for summary judgment, contending the cashier's check remitted by Ford did not cure Ehlert's default. Discovery continued, and a bench trial was scheduled for April 7, 1999. On February 22, 1999, Ehlert filed a motion to amend her answer and add a counterclaim, and Bar OK opposed the motion. The District Court did not rule on either Ehlert's motion to amend, or Bar OK's motion for summary judgment, until well after the settlement conference.

¶7 Ehlert, Kuczynski, and Ford, and their respective counsel, participated in negotiations

at the settlement conference on March 9, 1999. Following the conference, the parties filed a stipulation to vacate the scheduling order on the grounds that the three had entered into an MOU that settled the case.

¶8 The MOU, dated March 9, 1999, was signed by Ford, Ehlert, and Kuczynski. The MOU set forth the agreement among the parties, including the following relevant provisions: possession of the buildings would be surrendered by noon on September 1, 1999; the final day Ford and Ehlert could have cattle on the premises was December 1, 1999; the $80,500.00 payment would be transferred from the firm's trust account to Bar OK within two weeks; the parties agreed to fence the property, sharing the cost equally; and Bar OK would cooperate with Ford and Ehlert to furnish the Bureau of Land Management (BLM) with evidence Ehlert and Bar OK were in an effective lease from December 1, 1997 to September 1, 1999. In addition, the MOU provided for: "Confession of Judgement [sic] in Accordance with Settlement Agreement to be held by Counsel for [Bar OK] and to be filed if violated and not cured within thirty (30) days of written notice to [Ehlert and Ford] of breach." This was the only provision of the MOU that specifically referenced a "settlement agreement." Finally, the MOU provided that: "Ford, Ehlert, and Bar OK agree to release each other from all claims, and not to interfere with each others [sic] rights under this agreement."

¶9 Bar OK submitted a draft of a settlement agreement; however Ford and Ehlert did not sign the proposed settlement agreement, and instead sent an edited version of it back to Bar OK. A settlement agreement was never executed by the parties. Bar OK filed a motion to enforce the MOU on May 24, 1999, after Ford and Ehlert refused to sign the confession of judgment. On June 2, 1999, Ehlert filed a brief in opposition to the motion, and filed a motion to enforce the settlement agreement. Bar OK filed a reply brief on June 23, 1999.

¶10 The District Court held hearings on these motions on September 27, 1999, and October 25, 1999. At the September 27, 1999 hearing, the court heard testimony from William Berger (Berger), the settlement conference attorney who drafted the MOU; Vinita Shea, an employee of BLM; and Ehlert. The hearing was continued to October 25, 1999, when the court heard testimony from Ford and Kuczynski.

¶11 Berger testified that he believed that all issues among Ford, Ehlert, and Bar OK had been resolved at the settlement conference and that the MOU embodied the agreement among the parties. Berger testified that he thought the MOU was the final document, and although perhaps a more formal document would be drafted later, it would not be

substantively different from the MOU. In regards to the confession of judgment provision, Berger understood it to mean that if Ehlert and Ford did not turn possession over to Bar OK, the confession of judgment would be filed to avoid further litigation. Berger could not recall if, in addition to Ehlert, Ford was expected to sign the confession of judgment. Berger also explained that an important reason for the settlement of this case was to ensure that Ehlert could pasture her cattle on the BLM land adjacent to Bar OK.

¶12 Shea, a range land management specialist with BLM, explained that in 1998, when Ehlert had cattle on BLM land for which she did not have a grazing permit, BLM issued Ehlert a trespass. In order to transfer the grazing permit to Ehlert and remove the trespass, BLM needed verification of the lease extension to Ehlert. On June 8, 1999, Shea's supervisor sent a letter to Bar OK's counsel telling him BLM needed a document signed by Bar OK and Ehlert which specifically leased the property. However, on June 10, 1999, BLM concluded that the MOU was sufficient to show Ehlert's lease was extended, since it reflected the intention of the parties. Shea explained that Bar OK did not delay Ehlert's application process, and in her opinion, Bar OK cooperated with BLM in getting the permit issued to Ehlert. According to Shea, Ehlert settled the trespass on June 14, 1999, when she paid BLM the necessary fine and permit fee. Shea testified that Ehlert applied for the permit to pasture cattle on June 14, 1999, and on that same day, Shea gave Ehlert verbal approval to pasture her cattle on the BLM allotment. Ehlert received written approval from BLM on June 27, 1999.

¶13 Ehlert testified that the parties reached a settlement and a deal had been made at the settlement conference. She explained that the MOU settled her counterclaims against Bar OK, as well as the back lease payments due to Bar OK. Ehlert admitted to the court that she partially complied with the terms of the MOU, explaining that she did not leave the premises by September 1, 1999, but was later granted permission to stay until September 20, following a request for an extension. At the time of the hearing, Ehlert was still living on the premises, and Bar OK gave Ehlert permission to stay until October 31, 1999. Ehlert also admitted to not complying with the MOU provision concerning fencing, but added that the fence contractor hired by Bar OK did not allow her father to work with them.

¶14 Ehlert further testified that prior to June 11, 1999, she had no contact with BLM regarding the grazing permit. Ehlert told the court she believed she needed a written lease in order to settle the trespass issue and get a grazing permit, and that Bar OK, in her opinion, did not cooperate in showing BLM there was a lease. Ehlert explained to the court that the confession of judgment drafted by Bar OK provided for both her and Ford's

signatures, and that she could not tell from the confession of judgment what it was she was confessing to.

¶15 At the continued hearing on October 25, 1999, the court heard testimony from Ford and Kuczynski. Ford told the court his signature on the MOU meant that "everybody was to abide" by the MOU, but that "nobody did." Ford told the court he did not request an extension to stay on the premises, and that he was still living on the premises. Ford testified that the MOU required he sign a confession of judgment, but that both he and Ehlert refused to sign the document because it had a "complete[ly] different set of language." Further, in Ford's opinion, Bar OK did not cooperate in getting the BLM permit, since it did not facilitate getting a lease document executed prior to June 10, 1999. Ford testified that while they were waiting for the BLM permit, they had to purchase hay for the interim, seek other pasture land, and ship their cattle, thus resulting in damages.

¶16 Kuczynski, the president of Bar OK, testified that the MOU settled all claims, extended the lease, and provided a set date for Ford and Ehlert to vacate the premises so Kuczynski could then proceed with selling the property. Kuczynski explained to the court that he told BLM on April 15, 1999, that the lease with Ehlert had been extended and reinstated. Kuczynski understood that both Ford and Ehlert were to sign the confession of judgment. He testified that in his opinion, neither Ehlert nor Ford had complied with the fencing requirements in the MOU, nor had they moved off the premises by September 1, 1999. Kuczynski testified that in his opinion, he and Bar OK's counsel complied with the provisions of the MOU, particularly by cooperating with BLM.

¶17 On December 9, 1999, before the District Court entered its judgment on the motions, Bar OK filed a motion to add Ford as a defendant and to amend the complaint to allege claims against Ehlert and Ford for breaches of the MOU and civil trespass that occurred after the October 25, 1999 hearing. Bar OK also filed a second motion to enforce the MOU, claiming Ford and Ehlert remained on the property past the dates set out in the MOU and also that cattle remained on the property after the December 1, 1999 deadline.

¶18 On December 17, 1999, the District Court, after considering the parties' briefs and arguments, and the testimony presented, entered an order ruling that the MOU "is a valid, enforceable settlement agreement that settled the matters between the parties, and the parties shall be bound by the terms of the [MOU]."

¶19 Following the parties' briefings on Bar OK's motion to amend its complaint, the

District Court entered an order on January 13, 2000. The court found there were no substantial breaches of the MOU by either party on or before October 25, 1999. The court granted Bar OK's motion to add Ford as a defendant and Bar OK's motion to amend its complaint, with the following condition: the amended complaint "shall only allege claims which arose from and after October 25, 1999, and that it provides that the claims of the original complaint are settled under the terms of the MOU that this Court has previously found to be valid and enforceable."

¶20 In January of 2000, Bar OK filed an application for a preliminary injunction and temporary restraining order (TRO), arguing Ehlert and Ford continued to access Bar OK's property and that Ford continued to remain on the Bar OK premises. On January 14, 2000, the District Court issued a TRO that enjoined Ehlert and Ford from entering Bar OK's property and required they remove themselves and all their belongings from the property by January 20, 2000 (this date was later changed to January 28, 2000, by stipulation of the parties).

¶21 Bar OK filed its amended complaint on January 18, 2000, alleging breach of contract and civil trespass against both Ford and Ehlert.

¶22 On January 31, 2000, upon motion by Ford, a new District Court Judge assumed jurisdiction in this matter. On February 3, 2000, Ehlert filed an answer to Bar OK's amended complaint, wherein she denied most of the allegations, and added counterclaims that alleged Bar OK breached the original lease. On February 22, 2000, Bar OK filed a motion to dismiss Ehlert's counterclaim, and a motion to strike some of Ehlert's denials in her answer, her request for attorneys' fees, and her demand for a jury trial.

¶23 On April 14, 2000, Ford filed his answer and counterclaims to Bar OK's amended complaint, wherein he asserted several affirmative defenses, including fraudulent inducement into the MOU, and several counterclaims.

¶24 The District Court held a telephonic hearing to consider the pending motions, in which all the parties' counsel participated. On April 27, 2000, the District Court entered its order addressing the five pending motions. First, the court granted Bar OK's motion to dismiss Ehlert's counterclaims to the amended complaint (filed by Ehlert in February, 2000). Ehlert's counterclaims were nearly identical to her original counterclaim filed in February, 1999, and the court noted Ehlert was precluded from bringing any claims arising before the MOU, which had settled all claims between the parties as of March 9, 1999.

Second, the court denied Bar OK's motion to strike Ehlert's denials in her amended answer. Third, the court granted Bar OK's motion to strike Ehlert's request for attorneys' fees, since Ehlert acknowledged there was no authority for such an award. Fourth, the court denied Ehlert's motion to amend her counterclaim (filed by Ehlert in February, 1999), for the same reasons it granted Bar OK's motion to dismiss Ehlert's counterclaim filed in February 2000. Finally, the court concluded that it need not rule on Ehlert's demand for a jury trial, since Ford had timely demanded a jury trial. A trial date of October 10, 2000, was later set by the court.

¶25 The District Court apparently conducted another hearing on May 15, 2000, on Bar OK's motions to enforce the MOU. According to the District Court Minutes, both Ehlert and Ford were off the property, but some personal property still remained. The court noted that if the property was not removed it would treat this matter as a breach of contract and trespass. The court further determined that the MOU was binding on Ford. There is no transcript of this proceeding, and the only record of it is the District Court Minutes.

¶26 On June 26, 2000, the District Court entered an order that (1), denied Bar OK's first motion to enforce the MOU, requiring Ehlert and non-party Ford to sign the confession of judgment; and (2), denied Bar OK's second motion to enforce the MOU, since both Ehlert and Ford had since left the premises, and the issue was moot. Also on June 26, 2000, the District Court converted Bar OK's motion to dismiss Ford's counterclaim to a motion for summary judgment, since it would be considering matters outside the pleadings, namely testimony from the September 27, 1999 and October 25, 1999 hearings. The court held a hearing on the summary judgment on August 21, 2000.

¶27 On September 13, 2000, the District Court granted summary judgment in favor of Bar OK on its motion to dismiss Ford's counterclaim and motion to strike Ford's request for attorneys' fees.

¶28 On October 11, 2000, Bar OK filed a motion to dismiss its amended complaint without prejudice. The District Court granted the motion upon the filing of stipulations for dismissal by all three parties, and ordered that each party was to bear its own attorneys' fees and costs.

¶29 Ehlert and Ford bring separate appeals. Ehlert appeals the following District Court rulings: the order dated December 17, 1999, which concluded the MOU was a valid and enforceable agreement; and the order dated April 27, 2000, which denied her motion to

amend her counterclaim that was filed prior to execution of the MOU. Ford appeals only the District Court order of September 13, 2000, which granted summary judgment in favor of Bar OK and dismissed Ford's counterclaims. We affirm.

## STANDARD OF REVIEW

¶30 We review a district court's conclusions of law to determine if they are correct. *Carbon County v. Union Reserve Coal Co., Inc.* (1995), 271 Mont. 459, 469, 898 P.2d 680, 686 (citation omitted). When reviewing a district court's denial of a motion to amend the pleadings, we determine whether the district court abused its discretion. *Porter v. Galarneau* (1996), 275 Mont. 174, 188, 911 P.2d 1143, 1151-52 (citation omitted). The test for abuse of discretion is whether the trial court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice. *See C. Haydon Ltd. v. MT Min. Properties, Inc.* (1997), 286 Mont. 138, 146, 951 P.2d 46, 51.

¶31 Our standard of review of district court rulings on motions to dismiss under Rule 12(b)(6), M.R.Civ.P., is:

> A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. A motion to dismiss under Rule 12(b)(6), M.R. Civ.P., has the effect of admitting all well-pleaded allegations in the complaint. In considering the motion, the complaint is construed in the light most favorable to the plaintiff, and all allegations of fact contained therein are taken as true.

*Cut Bank v. Tom Patrick Const. Inc.,* 1998 MT 219, ¶ 6, 290 Mont. 470, ¶ 6, 963 P.2d 1283, ¶ 6 (citation omitted). The District Court's determination that Ehlert's counterclaim failed to state a claim is a conclusion of law. Our standard of review of a court's conclusion of law is whether the tribunal's interpretation of the law is correct. Cut Bank, ¶ 6 (citation omitted). We review appeals from summary judgment de novo, and determine whether there is an absence of genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. Winslow v. Montana Rail Link Inc., 2000 MT 292, ¶ 38, 302 Mont. 289, ¶ 38, 16 P.3d 992, ¶ 38 (citation omitted).

## DISCUSSION

# Issue 1

¶32 **Did the District Court err when it concluded the memorandum of understanding was a valid and enforceable settlement agreement that released all claims existing among the signatories to the memorandum of understanding at the time it was executed?**

¶33 Ehlert contends the District Court erred in its December 17, 1999 order by ruling the MOU was a valid and enforceable agreement, arguing the MOU was simply an agreement to agree, and that only a formal settlement agreement would be binding among the parties. Although Ehlert does not dispute that the parties reached a settlement on March 9, 1999, she contends the MOU was not the final document that settled the disputes, relying on the fact that the settlement agreement had yet to be drafted and that proper documentation of the extended lease had to be provided to BLM. Ehlert further argues that the District Court erred by not including any findings of fact in its December 17, 1999 order.

¶34 Bar OK contends that the more formal "settlement agreement" document was not necessary to finalize or carry out the agreement reached under the MOU. Bar OK argues that the MOU was an unconditional settlement agreement, and cites *Marta Corp. v. Thoft* (1995), 271 Mont. 109, 894 P.2d 333, and *Hetherington v. Ford Motor Co.* (1993), 257 Mont. 395, 849 P.2d 1039, for the proposition that this Court has recognized the validity and enforceability of such documents. Bar OK also asserts that Ehlert's appeal of this order is compromised by her judicial admissions made in the District Court. Finally, Bar OK argues the District Court had no duty to enter findings of fact and conclusions of law in its ruling on December 17, 1999.

¶35 Ehlert cites to Rule 52, M.R.Civ.P., for the proposition that the District Court was required to enter findings of fact and conclusions of law in its December 17, 1999 order. However, Rule 52(a), M.R.Civ.P., provides in part that "[f]indings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or 56 or any other motion except as provided in subdivision (c) of this rule." Subdivision (c) deals with judgments at trial, and is inapplicable to this case. Although this Court encourages a district court to include findings of fact and conclusions of law, "[t]his encouragement . . . does not translate into an absolute requirement." *Welch v. Welch* (1995), 273 Mont. 497, 501, 905 P.2d 132, 135 (when ruling on a motion for modification of a divorce decree, the district court did not abuse its discretion by not entering findings of fact and conclusions of law). We conclude the District Court was not required to enter findings with its December 17,

1999 order.

¶36 After considering the parties' briefs and arguments, and the testimony and evidence presented at the hearings, the District Court ruled the MOU was a valid and enforceable agreement. We agree. "An agreement is binding if made by an unconditional offer, and accepted unconditionally." *Marta Corp*., 271 Mont. at 112, 894 P.2d at 335 (citing *Hetherington*, 257 Mont. at 399, 849 P.2d at 1042). We have held that when there were no conditions placed on appellant's acceptance of the settlement agreement, appellants were "bound by the terms of the written stipulation signed by their counsel pursuant to the [a] ppellants' participation in a settlement conference." *Marta Corp*., 271 Mont. at 113, 894 P.2d at 335.

¶37 All the interested persons--Kuczynski, Ehlert, and Ford--were present at the settlement conference, and all participated in the negotiations. The settlement conference ended in all three persons, not their counsel, signing the MOU, which memorialized the agreement among the signatories. During the hearings, Berger, Ehlert, and Kuczynski testified that all the issues among the parties had been resolved at the settlement conference. Moreover, in a stipulation filed March 24, 1999, counsel for all the parties requested the court's scheduling order be vacated "since the action has been settled by a written memorandum of understanding, the terms of which may not be fully carried out until December 1, 1999."

¶38 Clearly there was a meeting of the minds during negotiations at the settlement conference, and all the participants anticipated being bound by the MOU, as evidenced by their signatures on the document and later testimony. We conclude the MOU memorialized the agreement among the parties and was valid and enforceable.

¶39 Ehlert argues that a more formal settlement agreement document was necessary to ensure both sides achieved what they had "penned" out in the MOU. However, the only mention of a "settlement agreement" was in relation to a confession of judgment, which was never executed. The MOU was not by its terms conditioned upon the execution of a settlement agreement. The record demonstrates that the MOU was not merely an agreement to agree, but rather was an unconditional resolution of the parties' claims.

¶40 We conclude the District Court's ruling that the MOU was a valid and enforceable agreement that effectively released any claims of the signatories thereto, was correct.

## Issue 2

¶41 **Did the District Court err when it denied Ehlert's motion to file an amended answer and counterclaim addressed to the original complaint, that she filed prior to negotiation of the memorandum of understanding?**

¶42 We have already concluded the District Court did not err in ruling the MOU was a valid and enforceable agreement that effectively resolved and released any claims existing prior to March 9, 1999. Ehlert's proposed amendments to her answer and counterclaim were filed in response to Bar OK's original complaint and were also filed prior to the execution of the MOU; any claims asserted in Ehlert's initial amended answer and counterclaim were deemed resolved by the execution of the MOU.

¶43 We therefore conclude the District Court did not abuse its discretion when it denied Ehlert's motion to file an amended answer and counterclaim addressed to the original complaint that she filed prior to execution of the MOU.

## Issue 3

¶44 **Did the District Court err when it granted summary judgment in favor of Bar OK on its motion to dismiss Ford's counterclaims?**

¶45 Ford appeals the September 13, 2000 order granting summary judgment in favor of Bar OK and dismissing Ford's counterclaims that were filed with his answer to Bar OK's amended complaint. In his answer and demand for a jury trial, Ford asserted six affirmative defenses including fraudulent inducement in regards to the MOU, constructive fraud, estoppel, and equitable estoppel. Ford also put forth seven counterclaims, alleging: (I) Ford and Ehlert were fraudulently induced into entering the lease agreement in 1994; (II) Bar OK committed constructive fraud by not allowing Ehlert to purchase the property; (III) Bar OK was unjustly enriched by lease payments and increased value of the land; (IV) Bar OK breached an oral contract Ford and Ehlert had to purchase property; (V) Bar OK tortiously interfered with Ford's business; (VI) Bar OK intentionally inflicted emotional distress on Ford and his family; and (VII) Bar OK interfered with Ford's access to the property. Notably, Ford alleged that he was fraudulently induced into signing the MOU as an affirmative defense, and did not plead it as a counterclaim.

¶46 In its order granting summary judgment on Bar OK's motion to dismiss Ford's

counterclaims, the District Court recognized that the counterclaims primarily stemmed from an alleged agreement between Bar OK and Ford and Ehlert, which ostensibly pre-existed the MOU, and concerned an option to purchase the property. The court again noted that the MOU resolved all prior claims, and thus concluded Ford could not bring a counterclaim premised upon matters occurring prior to March 9, 1999.

¶47 Ford argues the District Court erred when it failed to submit to the jury the question of fact concerning whether Ford's signature on the MOU was a result of Bar OK's fraudulent inducement, noting that if Ford is not bound by the MOU, he may bring counterclaims that occurred prior to the MOU.

¶48 Bar OK contends that because the majority of Ford's counterclaims concern matters resolved by the release provision of the MOU, the District Court did not err. Bar OK points out that since Ford was not a party to the original lease agreement, he cannot bring a claim of fraudulent inducement arising from its execution. Bar OK also notes that because its amended complaint was dismissed by stipulation and consent of the parties, Ford's affirmative defenses are moot.

¶49 Although Ford appeals the District Court's order granting summary judgment and dismissing his counterclaims, Ford's main contention on appeal relates to his affirmative defense that he was fraudulently induced into signing the MOU. We agree with Bar OK that once the amended complaint was dismissed, any of Ford's affirmative defenses filed in response to the amended complaint are rendered moot. Ford made no separate claim for fraudulent inducement that would survive a dismissal of the complaint.

¶50 Moreover, even if the court had addressed his fraudulent inducement claim, Ford cannot claim any damages resulting from an alleged breach of the MOU since he had no personal interest in the property at issue. Ford admitted during his testimony that he did not own any of the subject cattle, land, or equipment, and that he transferred all his assets to Ehlert in 1988. Finally, we also note that at the conclusion of the hearing on May 15, 2000, at which all the parties and their counsel were present, the District Court determined the MOU was binding on Ford, and Ford did not appeal this ruling.

¶51 Counts I, II, III, IV, and V of Ford's counterclaim allege claims that occurred in relation to the execution and performance of the original lease between Bar OK and Ehlert, all of which predated the MOU. Thus, the District Court properly struck these counts of the counterclaim. Moreover, in any event, Ford was not a party to the lease

agreement, and therefore cannot bring the claims.

¶52 Ford's Count VI, intentional infliction of emotional distress, refers to acts by Bar OK that were set out in the previous counts. For the same reasons set forth above, the District Court correctly dismissed this count as released under the MOU. Moreover, Ford admitted in his deposition that he did not suffer any emotional distress.

¶53 Ford's final count alleged that Bar OK interfered with his access to his property. Under the MOU, Ford and Ehlert had pasture rights on the Bar OK's property until December 1, 1999, at the latest. Nothing in the MOU allowed Ford to remain on the property past December 1, 1999. Ford therefore did not have the right to be on Bar OK's property and, as noted above, Ford had no ownership interest in any contiguous property, and the District Court correctly dismissed this count. We therefore conclude that there were no genuine issues of material fact concerning Ford's counterclaims, and that Bar OK was entitled to judgment as a matter of law.

¶54 For the foregoing reasons, we affirm.

/S/ PATRICIA COTTER

We Concur:

/S/ TERRY N. TRIEWEILER

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ JIM RICE