NO. 94-524

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

MARTA CORPORATION, a Montana
corporation, PAUL R. SMITH and
DONNA C. SMITH, husband and wife;
WALTER J, VERMEDAHL and PATRICIA
L. VERMEDAHL, husband and wife;
and ARLEN WISSEMAN,

     Plaintiffs, Counterclaim Defendants
       and Appellants,

    -vs-

ROBERT A. THOFT and SUSIE M. THOFT,
husband and wife,

     Defendants, Counterclaimants
       and Respondents.



APPEAL FROM:   District Court of the Twentieth Judicial District,
               In and for the County of Lake,
               The Honorable Michael H. Keedy, Judge presiding.


COUNSEL OF RECORD:

       For Appellant:

          Douglas J. Wold; wold Law Firm, Polson, Montana


       For Respondent:

          Sam E. Haddon; Boone, Karlberg & Haddon, Missoula
          Montana



                   Submitted on Briefs:  February 23, 1995

                            Decided:  May 4, 1995

Filed:

_____
          Clerk

Justice W. William Leaphart delivered the Opinion of the Court

Marta Corporation, Paul and Donna Smith, Walter and Patricia Vermedahl, and Arlen Wisseman (Appellants) appeal from the September 23, 1994 order of the Twentieth Judicial District, Lake County, denying their motion requesting reconsideration of court orders enforcing a stipulation and relief from an order granting a show cause hearing to find Appellants in contempt. We affirm.

This case started with a water rights dispute involving conflicting claims to waters of White Earth Creek and to the Irvine Flats aquifer in Lake County. Appellants and Robert and Susie Thoft (Respondents) claim water rights in White Earth Creek, which flows through the parties' properties. Respondents hold irrigation water claims from a well which draws its water from the Irvine Flats aquifer. Additionally, one Appellant party, the Smiths, have a developed spring which draws its waters from the Irvine Flats aquifer. Appellants, all neighboring ranchers, sued Respondents for injunctive relief arising from Respondents' use of surface and ground water.

This case was originally filed on September 30, 1992. On May 5, 1993, the District Court entered an order appointing a Special Master to effect an agreement for interim management of the water rights at issue. The Special Master completed a report and recommendation on June 30, 1993, but it was set aside by the court on August 11, 1993 because of "substantial error in the proceedings."

On May 12, 1994, the morning of the scheduled trial, the court

2

initiated settlement discussions, during which the parties agreed to general settlement terms. The court directed the parties' attorneys to meet and prepare a stipulation for entry of an order. The court scheduled a meeting for 6:00 p.m. on May 19, 1994 for entry of the order. On May 16, 1994, Respondents' counsel sent a draft stipulation to Appellants' counsel. On May 19, 1994, Respondents' counsel sent Appellants' counsel the final form of the stipulation: Appellants' counsel signed and mailed the stipulation to the court and the parties that same day. He did not have client approval but anticipated their approval for three reasons: First, they had an urgent need for water, second, the terms of the stipulation provided for modification if it became unworkable, and third, the court imposed the May 19 deadline. The next day, in accordance with the stipulation, counsel filed a motion to replace the Special Master.

Appellants received the stipulation on May 23, 1994 and they concluded that the written stipulation was unacceptable. They were not able to talk with their counsel until May 24, 1994. Appellants allege that after they explained to him that it was unacceptable, he called the court and spoke with the judge's assistant. At that time the stipulation had not been signed by the judge. Appellants allege that their counsel told the judge's assistant he wanted to withdraw the stipulation and she agreed to withdraw it and notify the judge that further documents would be filed. Appellants allege that, relying on the judge's assistant's assurances, they believed that the stipulation had been withdrawn. On May 26, 1994,

3

Appellants' counsel signed and mailed a motion to reschedule the trial date.

On May 29, 1994, the court signed the stipulation and order that both parties' counsel had signed on May 19, 1994. on May 31, 1994, Respondents filed their motion to enforce the stipulation and order. On June 6, 1994, the stipulation was filed with the clerk of court. On June 14, 1994, Respondents wrote to Appellants Smiths that they (Respondents) intended to enforce the signed stipulation and that unless the Smiths wrote a letter indicating a willingness to "honor and carry out" the terms of the stipulation, they would commence contempt proceedings. on July 7, 1994, Respondents moved for an order to show cause why the Smiths should not be held in contempt for their failure to carry out the terms and conditions of the stipulation. On July 15, 1994, the court granted Respondents' motion to enforce the stipulation and order (and for attorney's fees and costs) and denied Appellants' motion to reschedule the trial date. On September 23, 1994, the District Court denied Appellants' motion for relief from, and reconsideration of, its June 6 and July 15 orders, and granted Respondents' request to prepare and submit an order to show cause regarding Appellants' contempt. This appeal followed.

Two issues are presented on appeal:

1. Did the District Court err in denying Appellants relief from the court's orders of June 6 and July 15, 1994?

2. Did the District Court err in granting Respondents' motion for a show cause hearing to find Appellants in contempt for

4

not complying with the June 6, 1994 order?

I

Did the District Court err in denying Appellants relief from the court's orders of June 6 and July 15, 1994?

In *Hetherington v. Ford Motor Company* (1993), 257 Mont. 395, 849 P.2d 1039, after settlement negotiations, it appeared as if the parties had reached a settlement agreement. The Hetheringtons agreed to Ford's settlement offer and gave their counsel authority to accept the offer. Their counsel sent a letter stating that his clients had decided to accept Ford's offer of settlement. The letter specified the amount of the settlement offer, the parties' contributions, and stated that each party would forward certain paperwork. *Hetherington*, 849 P.2d at 1041.

Four days after this letter was sent, the Hetheringtons wrote a letter to their counsel indicating that they were discharging him and his firm, that they were not interested in the settlement which had been offered, and that they did not wish him to negotiate further on their behalf. The Hetheringtons contended that it was their understanding that their right to bring their claim would be preserved until the "written settlement agreement was formally approved and executed." *Hetherington*, 849 P.2d at 1041. We held that "[a]n agreement is binding if made by an unconditional offer, and accepted unconditionally." *Hetherington, 849 P.2d at 1042.* In that case, we held that the attorney's letter, and conference between the Hetheringtons and their attorney, "disclosed no conditions or manifestations of conditional intent." *Hetherington,*

5

*849* P.2d at 1042.

In the instant case, during the May 12 settlement discussion, the parties agreed to general terms, and the parties' counsel were instructed to meet and prepare a stipulation for entry of an order. Appellants' attorney executed a signed stipulation and submitted it to the judge for his signature. As in *Hetherington,* there were no conditions placed on Appellants' acceptance of the settlement agreement. Appellants and Respondents were present and represented at the settlement discussion and therefore were party to the agreement on general terms. Although Appellants argue strenuously, after the fact, that the written stipulation did not meet their wishes and was unacceptable to them, they do not point to any specific instances wherein the written stipulation is contrary to what they agreed to at the May 12 settlement conference.

Appellants argue that their attorney was unauthorized to execute the stipulation and that the court mistakenly entered the stipulation after it had been withdrawn. Appellants, however, were participants in the May 12, 1994 settlement discussion, at which time the terms of the stipulation were formulated. Applying the rationale of *Hetherington* to these facts, we hold that Appellants are bound by the terms of the written stipulation signed by their counsel pursuant to the Appellants' participation in a settlement conference. "The intentions of the parties are those disclosed and agreed to in the course of negotiations. A party's latent intention not to be bound does not prevent the formation of a binding contract." *Hetherington,* 849 P.2d at 1042. The instant

case is more compelling than *Hetherington* which involved oral settlement negotiations followed by a letter of acceptance. Here we have a signed stipulation filed with the court. That Appellants no longer wish to be bound by the settlement agreement, as set forth in the written stipulation, does not excuse them from complying with the terms of that stipulation.

II

Did the District Court err in granting Respondents' motion for a show cause hearing to find Appellants in contempt for not complying with the June 6, 1994 order?

In its September 23, 1994 order and memorandum, the District Court granted Respondents' request to prepare and submit an order to show cause regarding Appellants' alleged contempt for not complying with the signed stipulation. No hearing has been held on this issue. The Smiths argue that the facts do not support their contempt and no hearing should be held. We do not rule on the former contention and we disagree with the latter contention.

Rule 1 of the Rules of Appellate Procedure states in part:

> (b) In civil cases a party aggrieved may appeal from a judgment or order, except when expressly made final by law, in the following cases:
> (1) From a final judgment entered in an action or special proceeding commenced in a district court, or brought into a district court from another court or administrative body.

No contempt hearing was held and no final judgment regarding the Smiths' contempt was issued. It is premature for us to rule on this issue.

Affirmed

_____
Justice

7

We concur:

_____

_____

_____

_____
Justices

May 4, 1995

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Douglas J. Wold, Esq.
Wold Law Firm
P.O. Box 1212
Polson, MT 59860-1212

Sam E. Haddon, Esq.
Boone, Karlberg & Haddon
P.O. Box 9199
Missoula, MT 59807-9199

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy