No. 03-372

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 360

BRIAN J. LOCKHEAD,

       Plaintiff and Appellant,

   v.

DEBRA WEINSTEIN,

       Defendant and Respondent.

APPEAL FROM:    District Court of the Second Judicial District,
                      In and for the County of Silver Bow, Cause No. DV 00-106
                      The Honorable Kurt Krueger, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

              Alan F. Blakley, Attorney at Law, Missoula, Montana

       For Respondent:

              John R. Gordon; Reep, Spoon & Gordon, Missoula, Montana

Submitted on Briefs:  September 25, 2003

Decided:  December 18, 2003

Filed:

_____
                            Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1 Brian J. Lockhead appeals from the order entered by the Second Judicial District Court, Silver Bow County, which granted Debra Weinstein's motion to compel settlement. We affirm.

## BACKGROUND

¶2 Lockhead sued Weinstein in federal court for defamation, intentional and negligent infliction of emotional distress, malicious prosecution, actual malice, false imprisonment and a violation of 42 U.S.C. § 1983; the federal court dismissed the case for lack of jurisdiction. Lockhead then sued Weinstein in state court, dropping the false imprisonment and § 1983 claims. We reversed the trial court's decision on venue in *Lockhead v. Weinstein*, 2001 MT 132, ¶¶ 12-13, 305 Mont. 438, ¶¶ 12-13, 28 P.3d 1081, ¶¶ 12-13. After a substitution of judge, the District Court scheduled trial for October 21, 2002.

¶3 On September 23, 2002, the parties' attorneys agreed to settle the case during a telephone conversation, specifying a dollar amount and the preparation of a general release. Weinstein's counsel prepared and faxed a proposed release to one of Lockhead's attorneys on September 25, 2002.

¶4 Lockhead's attorney replied in a letter dated September 27, 2002, as follows:

> We received the proposed General Release and agree with the terms you have proposed. Brian Lockhead accepts the settlement offer for the sum of $7,500. Please forward a copy of the original General Release to [Lockhead's other attorney's] office with the Stipulation for Dismissal and we will return these to you early next week in exchange for the settlement proceeds.

2

The Court contacted my office and notified us that the final pretrial conference has been vacated because the first trial set with this trial is expected to proceed. We have been bumped to a later date. It appears that we have resolved this matter and will not require another setting.

Thank you for your assistance with resolving this disputed claim.

On the same day, Weinstein's counsel wrote to Lockhead's attorney that he had prepared and signed a stipulation to dismiss the action and had ordered a settlement check. Approximately two weeks later, Lockhead's attorney advised Weinstein's counsel by telephone that Lockhead refused to settle.

¶5 Weinstein moved to compel settlement, submitting her counsel's affidavit, the September 27 letters, the unsigned general release, a copy of the settlement check, and the stipulation to dismiss signed by her counsel in support. Lockhead responded. The District Court granted Weinstein's motion on the basis that Lockhead agreed to the terms of the settlement and § 37-61-401(1), MCA, does not apply. Lockhead appeals.

## DISCUSSION

¶6 Did the District Court err in granting Weinstein's motion to compel settlement?

¶7 The existence of a valid express contract is a question of law. *Larson v. Green Tree Financial Corp.*, 1999 MT 157, ¶ 17, 295 Mont. 110, ¶ 17, 983 P.2d 357, ¶ 17 (citation omitted). We review a district court's conclusion of law, including one of statutory interpretation, for correctness. *Nelson v. Farmers Union Mut. Ins. Co.*, 2003 MT 101, ¶ 26, 315 Mont. 268, ¶ 26, 68 P.3d 689, ¶ 26 (citations omitted).

¶8 Lockhead first argues his attorney's September 27 letter did not bind him to a settlement agreement because the agreement was not "final." He concedes his attorney was

3

"speaking on [Lockhead's] behalf" and did not "commit[] a wrongful act" in stating "Brian Lockhead accepts the settlement offer for the sum of $7,500." However, Lockhead argues this statement was only an "attempt[] to reach a settlement proposal that his attorney would then communicate to Lockhead for purposes of final agreement." In doing so, he attempts to distinguish cases in which we determined settlement agreements were enforceable.

¶9      Weinstein relies primarily on *Hetherington v. Ford Motor Co.* (1993), 257 Mont. 395, 849 P.2d 1039. There, we determined the only essential elements of an enforceable agreement are an unconditional offer and unconditional acceptance. *Hetherington*, 257 Mont. at 399, 849 P.2d at 1042. Weinstein contends the *Hetherington* elements are satisfied here.

¶10     *Hetherington* is our leading case on the enforceability of settlement agreements. There, the Hetheringtons had met with their counsel, agreed to the settlement terms, and authorized their counsel to accept; thereafter, their counsel sent a letter to Ford's representatives indicating his clients' acceptance. *Hetherington*, 257 Mont. at 397, 849 P.2d at 1041. Ford then moved for summary judgment on the basis of the settlement, but the Hetheringtons responded with an affidavit that they understood they would retain their right to bring a claim until they reviewed and signed a written agreement. *Hetherington*, 257 Mont. at 398-99, 849 P.2d at 1041-42. The district court denied Ford's motion, determining that, absent a written and signed agreement, the parties' intent to be bound was a question of fact. *Hetherington*, 257 Mont. at 398, 849 P.2d at 1041.

4

¶11    On appeal, we observed the Hetheringtons did not disclose any intent not to be bound to their attorney or to the other parties.  We applied Restatement (Second) of Contracts, § 21, which provides that "[n]either real nor apparent intention that a promise be legally binding is essential to the formation of a contract, but a manifestation of intention that a promise shall not affect legal relations may prevent the formation of a contract." *Hetherington*, 257 Mont. at 399, 849 P.2d at 1042.  We  ultimately concluded "[a] party's latent intention not to be bound does not prevent the formation of a binding contract."  On that basis, we reversed the district court's determination that a question of fact existed regarding the parties' intent.  *Hetherington*, 257 Mont. at 399, 849 P.2d at 1042.

¶12    Under *Hetherington*, a party to a settlement agreement is bound if he or she has manifested assent to the agreement's terms and has not manifested an intent not to be bound by that assent.  *See Hetherington*, 257 Mont. at 399, 849 P.2d at 1042.  Lockhead attempts to distinguish *Hetherington* on the grounds that "there is no evidence" that Lockhead met with his attorney, authorized him to accept, or "wanted to agree."  *Cf. Hetherington*, 257 Mont. at 397, 849 P.2d at 1041.  However, Lockhead authorized his attorney to write "Brian Lockhead accepts," a statement which clearly manifested his acceptance.  *See* § 28-2-501(1), MCA.  Further, the unrefuted affidavit of Weinstein's counsel states "the parties had reached an agreement" subject to Lockhead's review of the general release by September 23, and the September 27 letter indicates Lockhead reviewed and approved the release.  Therefore, there is evidence of Lockhead's agreement and his attorney's authority to communicate acceptance.

5

¶13 Lockhead argues, however, that the September 27 letter was an "agreement to agree." This is precisely the "latent intention" argument we rejected in *Hetherington*. *See Hetherington*, 257 Mont. at 399, 849 P.2d at 1042. Therefore, applying *Hetherington* to these facts, we conclude the unconditional September 27 agreement in this case is enforceable.

¶14 Lockhead also relies on *Bar OK Ranch, Co. v. Ehlert*, 2002 MT 12, 308 Mont. 140, 40 P.3d 378. There, we affirmed a district court's determination that a memorandum of understanding was an enforceable settlement agreement when three people and their attorneys attended a settlement conference and "all three persons, not their counsel" signed the memorandum. *Bar OK Ranch, Co.*, ¶ 37. Lockhead contends that, unlike *Bar OK Ranch, Co.*, "there is no evidence" in the present case that he participated in negotiations. Consequently, he argues "it seems reasonable to conclude" that the document in *Bar OK Ranch, Co.* would not have been enforceable if it had been signed by the parties' attorneys and not the parties themselves. We did not conclude or hold in *Bar OK Ranch, Co.*, however, that parties must attend a settlement conference or sign a document to render an agreement enforceable. Rather, the parties' attendance and signatures, along with their later testimony, were evidence of their agreement to settle. *Bar OK Ranch, Co.*, ¶ 38. Here, the affidavit of Weinstein's counsel, Lockhead's attorney's September 27 letter, and Lockhead's concession that his attorney spoke on his behalf in stating unequivocally that "Brian Lockhead accepts" are evidence of Lockhead's agreement.

6

¶15    Lockhead also relies on *Marta Corp. v. Thoft* (1995), 271 Mont. 109, 894 P.2d 333. There, we affirmed the district court's denial of a motion for relief from a stipulation signed and mailed by an attorney without his clients' approval, noting the clients' participation in a settlement discussion both in our analysis of the clients' agreement to the settlement's general terms and in our rejection of the argument that the attorney was unauthorized to settle. *Marta Corp.*, 271 Mont. at 113, 894 P.2d at 335. Lockhead argues that, unlike in *Marta Corp.*, "there is no evidence" in the present case that he attended or participated in settlement negotiations. However, as in *Bar OK Ranch, Co.*, we did not conclude that a settlement agreement is only enforceable if the parties attend and participate in a settlement discussion, but merely referred to the parties' attendance and participation as evidence of their agreement. Furthermore, our discussion of an attorney's authority in *Marta Corp.* does not apply here, because Lockhead has not asserted his attorney lacked settlement authority. Lockhead's reliance on *Marta Corp.* and *Bar OK Ranch, Co.* is misplaced.

¶16    Lockhead also relies on § 37-61-401(1), MCA, and *In re Estate of Goick* (1996), 275 Mont. 13, 909 P.2d 1165, for the proposition that he is not bound because the settlement agreement was not filed with the clerk of court or entered upon the court's minutes. We disagree and partially overrule *Estate of Goick*.

¶17    The Montana Legislature "borrowed" the original version of what is now § 37-61-401(1), MCA, from California in 1895, soon after statehood. *State v. Turlok* (1926), 76 Mont. 549, 562, 248 P. 169, 174. It reads the same now as it did then, except for a few omitted commas and a repositioning of the word "to":

(1) An attorney and counselor has authority to:

(a) bind his client in any steps of an action or proceeding by his agreement filed with the clerk or entered upon the minutes of the court and not otherwise;

(b) receive money claimed by his client in an action or proceeding during the pendency thereof or after judgment unless a revocation of his authority is filed and, upon the payment thereof and not otherwise, to discharge the claim or acknowledge satisfaction of the judgment.

Section 37-61-401(1), MCA. This Court also adopted California's interpretation that the statute neither abridges nor expands an attorney's common law authority to represent a client, but merely "prescribe[s] its exercise." *Turlok*, 76 Mont. at 562, 248 P. at 174 (citations omitted). Further, we have recognized that a "'literal construction [of the statute] would . . . lead to absurd consequences.'" *State v. Nelson* (1991), 251 Mont. 139, 141, 822 P.2d 1086, 1087 (quoting *Turlok*, 76 Mont. at 563, 248 P. at 175).

¶18 Lockhead argues the District Court improperly relied on our statement of the statute's purpose in *Nelson*, which is "to relieve the presiding judge of determining controversies between attorneys as to their unexecuted agreements." *Nelson*, 251 Mont. at 141, 822 P.2d at 1087 (citing *Bush v. Baker* (1913), 46 Mont. 535, 546, 129 P. 550, 553). Lockhead distinguishes *Nelson* on grounds it concerned an attorney's oral stipulation in a court's chambers, and the agreement in the present case did not involve the District Court. *See Nelson*, 251 Mont. at 140, 822 P.2d at 1087. However, we adopted the statement of the statute's purpose in *Nelson* from *Bush*, a case which concerned an agreement between attorneys. Therefore, the District Court did not err in relying on *Nelson*'s statement of the statute's purpose.

¶19    Alternatively, Lockhead contends Weinstein frustrated the purpose of the statute by moving the court to compel settlement without providing evidence that Lockhead authorized his attorney to settle, as was the situation in *Hetherington*.  *Hetherington*, 257 Mont. at 397, 849 P.2d at 1041.  *Hetherington*, however, did not address § 37-61-401(1), MCA.  Moreover, the statute was not intended to prevent a district court from enforcing "stipulations admitted by the party or his attorney against whom they are alleged."  *Bush*, 46 Mont. at 546, 129 P. at 553-54 (citation omitted).  Because Lockhead's attorney admits sending the September 27 letter and Lockhead does not contest his attorney's authority to do so, Weinstein did not frustrate the statute's purpose.

¶20    Lockhead relies heavily on the interpretation of § 37-61-401(1), MCA, in  *Estate of Goick*.  There, the decedent's mother and siblings moved to compel settlement based on a telephonic oral agreement of the parties' attorneys.  *Estate of Goick*, 275 Mont. at 17, 909 P.2d at 1167.  The decedent's spouse contended the agreement was tentative and subject to the parties' approval.  *Estate of Goick*, 275 Mont. at 17, 909 P.2d at 1167.  The district court found counsel agreed to the settlement with the parties' consent, but concluded the agreement was insufficient to bind the parties.  *Estate of Goick*, 275 Mont. at 23, 909 P.2d at 1171.

¶21    On appeal, this Court relied on both § 72-3-915(1), MCA, and § 37-61-401(1), MCA, in affirming the district court's denial of the motion to compel settlement.  *Estate of Goick*, 275 Mont. at 23, 909 P.2d at 1171.  Section 72-3-915(1), MCA, is not at issue in the present case.  With regard to § 37-61-401(1), MCA, we merely quoted the statute as providing that

9

an attorney has authority to bind a client when the agreement had been "filed with the clerk or entered upon the minutes of the court and not otherwise," and observed that the settlement agreement at issue was not filed or entered in the minutes. *Estate of Goick*, 275 Mont. at 23, 909 P.2d at 1171. Based in part on those facts, we concluded the oral agreement was not binding. We did not address *Turlok*, *Nelson*, or *Hetherington*.

¶22 The Court's literal application of § 37-61-401(1), MCA, in *Estate of Goick* was inconsistent with prior case law interpreting the statute. *See, e.g.*, *Nelson*, 251 Mont. at 141, 822 P.2d at 1087; *Turlok*, 76 Mont. at 563, 248 P. at 175; *Bush*, 46 Mont. at 546, 129 P. at 553-54. Moreover, a literal interpretation of § 37-61-401(1)(a), MCA, would preclude an attorney from binding his or her client to a settlement agreement, while § 37-61-401(1)(b), MCA, would allow an attorney to discharge a claim or acknowledge satisfaction of judgment once he or she has received money. Under this literal interpretation, an attorney's authority to bind a client to a settlement would depend entirely on whether the attorney received funds. This not only does not make sense, it is an absurd result. Therefore, we overrule that portion of *Estate of Goick* stating a client is not bound to a settlement agreement unless the agreement is filed or entered upon the court's minutes.

¶23 We hold the District Court did not err in enforcing the settlement agreement.

¶24 Affirmed.

/S/ KARLA M. GRAY

We concur:

10

/S/ PATRICIA COTTER
/S/ JAMES C. NELSON
/S/ JIM RICE
/S/ W. WILLIAM LEAPHART
/S/ JIM REGNIER
/S/ JOHN WARNER