JUSTICE NELSON,
dissenting.
¶64 I agree with the Court’s conclusions that the mediator’s report was confidential, that all of the evidence of conversations and conduct that occurred at the mediation was confidential, and that the District Court erred by admitting evidence protected under the Mediation Confidentiality Statute. Opinion, ¶¶ 55, 58, 60. I do not agree, however, with the Court’s conclusion that the District Court’s error was harmless. Opinion, ¶ 60. The Court’s conclusion in this regard is predicated on its determination that the so-called Memorandum of Understanding is an enforceable contract. Opinion, ¶¶ 42, 55, 60. In my view, the Court goes too far in crafting its decision to uphold the Memorandum. The Court’s analysis is built on ignoring parts of the Mediation Confidentiality Statute, creating exceptions to blackletter law, and stacking one mistake on top of another. In its efforts to enforce the Memorandum, I believe the Court does serious damage to the Mediation Confidentiality Statute, not to mention the attorney-client privilege laws, as well as the Statute of Frauds and the Uniform Electronic Transactions Act. I would reverse, and I thus respectfully dissent from the Court’s contrary decision.
*122 I. The Memorandum of Understanding
¶65 Lest there be any confusion about what the “Memorandum of Understanding” actually is, it is not a tangible document detailing terms and conditions of a contractual agreement and containing pen- and-ink signatures at the bottom. Nor is it the record of an electronic transaction where a purchaser entered her credit card information into a merchant’s website and hit the “Submit Order” button. What we are dealing with here is an email-not a document attached to an email; rather, just an email. Naturally, this email does not contain a traditional pen-on-paper signature; the email itself is simply bytes retained in computer memory. That fact is not necessarily fatal, however, because the Uniform Electronic Transactions Act (Title 30, chapter 18, part 1, MCA) may give legal validity to an “electronic record” of this nature-provided that certain conditions are met. The problem is that there is no admissible evidence showing that the conditions were, in fact, met here.
¶66 For starters, the email purports to be “From” Jory Ruggiero, “To” Guy Rogers, with “Cc” to “breting engel; Thomas Stoever; McDowell, Heather A.” As we now know through parol evidence, Ruggiero drafted the email on his computer at the mediation site after a daylong mediation. According to the time stamp appearing on the printout of the email, the email was sent at 9:56 p.m. on July 14, 2010. Yet, since the email was not sent from the email account of the party sought to be charged here (i.e., the Kluvers), the question arises whether Ruggiero had legal authority to bind the Kluvers to the terms of an email that they themselves did not draft, did not sign, and did not transmit. As will be seen, there is no admissible evidence that the Kluvers authorized Ruggiero to contractually bind them to the terms stated in his email.
¶67 Furthermore, the email sets forth “terms” which purport to “memorialize” a global settlement agreement “between all Plaintiffs in this matter, Bechtal and all Defendants, except Defendant Hydrometrics.” It is captioned “Kluver et al. v. PPLM et. al Settlement Memorandum of Understanding.” The email details concessions that each side will make in order to settle the parties’ dispute. Among other things, the email requires “Plaintiffs” to convey fee simple title to certain land. Yet, since the Uniform Electronic Transactions Act applies only if the parties have agreed to conduct a transaction by electronic means, § 30-18-104(2), MCA, the question arises whether the Kluvers agreed to be bound to the sale of their ranchland by means *123 of an email. As will be seen, there is no admissible evidence of an agreement by the Kluvers to conduct transactions by electronic means.
¶68 Finally, since the Uniform Electronic Transactions Act applies only to “actions occurring between two or more persons relating to the conduct of business, commercial, or governmental affairs,” § 30-18-102(18), -104(2), MCA, the question arises whether a mediation agreement between parties to settle a lawsuit constitutes business affairs, commercial affairs, or governmental affairs. The Court simply assumes the answer to this question is “yes”-thereby extending the reach of the Uniform Electronic Transactions Act in ways the Legislature may not have intended.
¶69 In sum, there is a complete lack of evidence and authority supporting the Court’s decision. Indeed, the Court’s foundation for upholding the Ruggiero email as a binding contract is “as thin as the homeopathic soup that was made by boiling the shadow of a pigeon that had been starved to death.” Abraham Lincoln, Sixth Debate with Stephen A. Douglas, at Quincy, Illinois (Oct. 13,1858), in The Collected Works of Abraham Lincoln vol. 3, 245, 279 (Roy P. Basler ed., Rutgers University Press 1953). Before explaining in detail why the Ruggiero email is not a valid contract, I begin by summarizing the relevant legal principles. While the email purports to “memorialize” the terms of the parties’ settlement, the Kluvers are concerned primarily with the question whether, “without having signed anything, [they] must part with land their family has ranched for four generations.” I thus focus on the law applicable to this question.
II. Legal Principles
¶70 Statute of Frauds. With exceptions not applicable here, an interest in real property may not be transferred unless there is an instrument in writing subscribed by the party transferring the property or by the party’s lawful agent. Section 70-20-101, MCA; Opinion, ¶ 21. Indeed, an agreement to convey an interest in real property is “invalid” unless the agreement, or some note or memorandum thereof, is in writing and subscribed by the party to be charged or by the party’s agent. Section 28-2-903(l)(d), MCA. Particularly significant to the analysis in this case, “[t]he agreement, if made by an agent of the party sought to be charged, is invalid unless the authority of the agent is in writing and subscribed by the party sought to be charged.” Section 28-2-903(l)(d), MCA (emphasis added); accord § 70-20-101, MCA; Opinion, ¶ 21.
¶71 Uniform Electronic Transactions Act. “If a law requires a record to be in writing, an electronic record satisfies the law.” Section *124 30-18-106(3), MCA. “If a law requires a signature, an electronic signature satisfies the law.” Section 30-18-106(3), MCA. An “electronic record” is “a record created, generated, sent, communicated, received, or stored by electronic means.” Section 30-18-102(8), MCA. An “electronic signature” is “an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record.” Section 30-18-102(9), MCA. These provisions apply, however, “only to transactions between parties each of which has ágreed to conduct transactions by electronic means.” Section 30-18-104(2), MCA. “Whether the parties agree to conduct a transaction by electronic means is determined from the context and surrounding circumstances, including the parties’ conduct.” Section 30-18-104(2), MCA. Importantly, a “transaction” is “an action or set of actions occurring between two or more persons relating to the conduct of business, commercial, or governmental affairs.” Section 30-18-102(18), MCA. “If parties have agreed to conduct a transaction by electronic means and a law requires a person to provide, send, or deliver information in writing to another person, the requirement is satisfied if the information is provided, sent, or delivered, as the case may be, in an electronic record capable of retention by the recipient at the time of receipt.” Section 30-18-107(1), MCA.
¶72 Mediation Confidentiality Statute. “A mediator’s files and records, with the exception of signed, written agreements, are closed to all persons unless the parties and the mediator mutually agree otherwise.” Section 26-1-813(3), MCA. With exceptions not applicable here, “all mediation-related communications, verbal or written, between the parties or from the parties to the mediator and any information and evidence presented to the mediator during the proceedings are confidential.” Section 26-1-813(3), MCA. It bears emphasizing that this statute refers to “all” communications, whether verbal or written, that are “mediation-reZafecZ” (emphasis added). The statute is written in broad language. If a communication is “related” to mediation, it is confidential. Furthermore, it also bears emphasizing that the only exception to the “closed” nature of the mediator’s files and records is “signed, written agreements.” Section 26-1-813(3), MCA (emphasis added). Hence, unless the Ruggiero email constitutes a “signed, written agreement” under the Mediation Confidentiality Statute, it is confidential and inadmissible.
*125 III. Contract Analysis
¶73 With these principles in mind, I now address the failures of the Ruggiero email to satisfy the Statute of Frauds, and the methods the Court employs to circumvent these problems.
1. Not a ‘Transaction”
¶74 Perhaps the most significant failing of the Ruggiero email is the fact that it was not signed by the persons to be bound-i.e., the Kluvers. To remedy this problem, the Court first invokes the Uniform Electronic Transactions Act. Opinion, ¶ 22. This Act applies, however, only to a “transaction,” § 30-18-104(2), MCA, which is defined as “an action or set of actions occurring between two or more persons relating to the conduct of business, commercial, or governmental affairs,” § 30-18-102(18), MCA (emphasis added). Without analysis or authority-indeed, without even acknowledging the question-the Court assumes that a “Settlement Memorandum of Understanding” between parties to a lawsuit constitutes “an action ... relating to the conduct of business, commercial, or governmental affairs.” Section 30-18-102(18), MCA. As an initial matter, I cannot agree with the proposition that this statutory definition encompasses all settlement memorandums between parties to a lawsuit. But even if some settlement memorandums in some cases do satisfy the definition, I cannot agree that the memorandum in this case does. The present lawsuit does not “relate to” a business affair, a commercial affair, or a governmental affair. It relates to a claim for damages resulting from groundwater pollution. The supposed settlement memorandum, moreover, arose out of a confidential mediation proceeding. I therefore disagree with the Court’s unstated premise that the Ruggiero email represents a “transaction” under the Uniform Electronic Transactions Act. Hence, for this reason alone, Ruggiero’s email cannot be a valid contract to which the Kluvers are bound.
2. No Agreement to Conduct Transactions Electronically
¶75 Assuming, for the sake of argument, that the Ruggiero email is a “transaction,” this does not automatically make the Uniform Electronic Transactions Act applicable. The Act applies “only to transactions between parties each of which has agreed to conduct transactions by electronic means.” Section 30-18-104(2), MCA (emphasis added). What admissible evidence do we have that “each [party] has agreed to conduct transactions by electronic means”? There is none.
¶76 The Court contends, however, that the Ruggiero email itself is evidence of an agreement to conduct transactions-including the transfer of fee title to the Kluvers’ ranchland-by email. Opinion, ¶ 24. *126 Why? Because the email “is a writing created in email format on Ruggiero’s computer during the mediation and explicitly states that the parties reviewed and approved it,” and because “[a]t the conclusion of the mediation, it was transmitted by email from Ruggiero to Rogers.” Opinion, ¶ 24. So, apparently, we know that each party agreed to conduct transactions by electronic means because one of the parties sent an email to the other parties, and the email recites that it “has been reviewed and approved by the parties and their counsel copied herein.” This reasoning is completely circular and strains credulity beyond the breaking point.
¶77 First, other than what is recited in the email itself, there is no evidence that the parties did, in fact, review and approve the email. Second, and more importantly, even if the parties did review and approve the email, that fact is confidential under the Mediation Confidentiality Statute. As the Court acknowledges elsewhere in its Opinion, “all of the evidence of conversations and conduct that occurred at the mediation was confidential under § 26-1-813, MCA.” Opinion, ¶ 58 (emphasis added). The statement in the email that “[t]his Memorandum has been reviewed and approved by the parties and their counsel copied herein” is “evidence of conversations and conduct that occurred at the mediation.” Opinion, ¶ 58. As such, the statement is “confidential under § 26-1-813, MCA,” Opinion, ¶ 58, and cannot be used to create an agreement to conduct transactions by electronic means.[1]
¶78 Lastly, there is nothing in the email indicating that Ruggiero intended it to be anything other than a summary of terms that the parties had agreed upon for settling the lawsuit. There is nothing in the email indicating that Ruggiero intended the email itself to serve as the final “signed, written agreement.” Section 26-1-813(3), MCA. More to the point, there is nothing in the email establishing that the Kluvers “agreed to conduct transactions by electronic means.” Section 30-18-104(2), MCA. Inferring such an agreement, as the Court does here, amounts to appellate bootstrapping.
*127 ¶79 Implicitly conceding that the Ruggiero email is insufficient in itself to establish an agreement to conduct a land transaction by email, the Court resorts to statements that Karson Kluver apparently made to the McRaes one or two days after the mediation. Opinion, ¶ 24. According to the District Court’s findings, Karson “expressed sentiments which acknowledged that a settlement of claims had been reached at the mediation.” First of all, however, the fact that such communications are “mediation-related” makes them confidential under the Mediation Confidentiality Statute and, thus, inadmissible. Section 26-1-813(3), MCA. Secondly, expressing sentiments which acknowledge that a settlement of claims has been reached is not even remotely, under the most liberal of interpretations, evidence of an agreement “to conduct transactions by electronic means.” Section 30-18-104(2), MCA. The Court is grasping at straws in using Karson’s privileged remarks to the McRaes about the existence of a presumed settlement to establish the existence of an agreement by him to conduct legally binding transactions by email.
¶80 In sum, the Ruggiero email purports, at most, to “memorialize” terms that the parties had agreed upon, during the mediation, for proceeding with the settlement of the lawsuit. It is by no means an agreement to conduct transactions by electronic means. Hence, for this reason as well, the email is not a valid contract to which the Kluvers are bound.
3. Ruggiero’s Authority to Act as Agent
¶81 Assuming, for the sake of argument, (1) that the Ruggiero email is a “transaction” and (2) that the Kluvers agreed to conduct transactions by electronic means, the next obstacle the Court faces is the fact that the Kluvers did not draft, did not sign, and did not transmit the email. Ruggiero did all of that.[2] It becomes necessary, *128 therefore, to establish that Ruggiero had authority to take these actions as the Kluvers’ agent. As noted, an agreement to convey an interest in real property is invalid unless the agreement is in writing and subscribed by the party to be charged or by the party’s agent; and if the agreement is made by the party’s agent-as it allegedly was here-the agreement “is invalid unless the authority of the agent is in writing and subscribed by the party sought to be charged.” Section 28-2-903(l)(d), MCA. What admissible evidence, then, do we have that “the authority of [Ruggiero] is in writing and subscribed by the [Kluvers]”? There is none. And that should be the end of the analysis.
¶82 The Court, however, decides to simply dispense with this writing requirement. The Court proceeds to adopt a “physical proximity” exception to the plain and unambiguous language of § 28-2-903(l)(d), MCA. Opinion, ¶¶ 27-29. This is a clear violation of the most fundamental maxim of statutory construction: “In the construction of a statute, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted.” Section 1-2-101, MCA (emphasis added); accord Opinion, ¶ 53. As support for its approach, the Court cites a 149-year-old case from California, plus an 1894 decision from Nebraska and a 1925 decision from Idaho. Opinion, ¶ 27 & n. 3. Yet, regardless of the law in those states, and whether that law is still valid in those states, our decision here is controlled by Montana law-§ 28-2-903(l)(d), MCA-which does not contain the exception the Court manufactures today. Section 1-2-101, MCA.
¶83 Another flaw in the Court’s adoption of such an exception here is the fact that it violates the Mediation Confidentiality Statute. The Court holds that the “physical proximity” exception shall apply “in the context of a mediation session.” Opinion, ¶ 28. According to the California, Nebraska, and Idaho cases cited by the Court, this exception “ ‘arises from the doctrine that what one does in the presence of and by the direction of another is the act of the latter.’ ” Opinion, ¶ 27 (emphasis added) (quoting Videau v. Griffin, 21 Cal. 389, 392 (Cal. 1863)); see also Opinion, ¶ 27 n. 3 (“ ‘ “If it is signed in his presence by his direction, an oral request to do the act is all that is required.” ’ ” (emphasis added) (quoting Bigler v. Baker, 58 N.W. 1026, 1029 (Neb. 1894), in turn quoting McMurtry v. Brown, 6 Neb. 368, 375 (Neb. 1877))); Opinion, ¶ 27 n. 3 (“ ‘ “One may write and execute an instrument by the hand of another when done in his presence and by his direction, and the fact may be proved by parol evidence.” ’ ” (emphasis added) (quoting Leaf v. Codd, 240 P. 593, 596 (Idaho 1925), *129 in turn quoting Morton v. Murray, 51 N.E. 767, 770 (Ill. 1898))). As all of these cases reflect, it is not merely physical presence that triggers the exception. It is the fact that the agent acted “by the direction of’ his principal while in the principal’s presence. In the Morton case, for example, the letter from Murray (the principal) “was written in his presence, by his dictation, and in his name” by Mrs. Murray (the agent). 51 N.E. at 769. If we are to apply this rule, as the Court states, “in the context of a mediation session,” then we must know not only that the agent and the principal were in physical proximity, but that the agent acted “by the direction of’ the principal. Yet, in order to know this, we must consider “conversations and conduct that occurred at the mediation’-evidence that the Court correctly holds is confidential under § 26-1-813, MCA. Opinion, ¶ 58. Thus, there can be no “physical proximity” exception to § 28-2-903(l)(d), MCA, in the mediation context without negating the confidentiality requirement of § 26-1-813, MCA.
¶84 Still another flaw in the Court’s application of this exception here is the lack of any evidence that the Ruggiero email “was written in [the Kluvers’] presence, by [their] dictation, and in [their] name.” Morton, 51 N.E. at 769. Indeed, as noted earlier, the record reflects that the Kluvers left the mediation site while the email was still being drafted. Moreover, even assuming they were in physical proximity to Ruggiero, there is not a shred of evidence that the Kluvers “directed” him to electronically sign the email on their behalf, as the foregoing cases require.
¶85 Hence, for this third reason as well, the Ruggiero email is not a valid contract to which the Kluvers are bound.
4. Statute of Frauds Not Complied With
¶86 In sum, what we have is an email drafted and transmitted by Ruggiero purporting to memorialize the terms of a settlement. We have no idea whether anyone agreed with what Ruggiero wrote, because “all of the evidence of conversations and conduct that occurred at the mediation was confidential under § 26-1-813, MCA.” Opinion, ¶ 58. We also do not know whether the Kluvers gave Ruggiero authority to act as their agent, or whether the Kluvers agreed to conduct transactions by electronic means (assuming that a mediation settlement is a “transaction”). There is no admissible evidence establishing any such agreements.
¶87 To deal with these problems, the Court finally decides that the Statute of Frauds is inapplicable in any event, and thus that there is no need for a writing signed by the Kluvers. Why? Because Karson *130 spoke with the McRaes after the mediation and acknowledged that a settlement had been reached. Opinion, ¶ 30. As I have already pointed out, these communications are “mediation-related” and, thus, confidential and inadmissible. Section 26-1-813(3), MCA. Furthermore, all Karson did (according to the District Court’s findings) was drive to the McRaes’ ranch yard “[o]ne or two days after the mediation” and “express[ ] sentiments which acknowledged that a settlement of claims had been reached at the mediation.” This hardly constitutes an admission of “the existence of a contract.” Opinion, ¶ 30. And it certainly does not qualify as an admission that Ruggiero had been given authority to act as the Kluvers’ agent in a land transaction, or that the Kluvers had agreed to conduct transactions by electronic means.
¶88 The Court’s reliance on Hayes v. Hartelius, 215 Mont. 391, 697 P.2d 1349 (1985), is wholly unavailing. There, we observed that “[t]here is no question but that the parties made a contract for the purchase of the Hartelius home. They made an oral agreement which was further consented to by conduct.” Hayes, 215 Mont. at 395, 697 P.2d at 1352. That conduct consisted of the Hayes moving into the house, making a down payment of $10,000, and making good and timely payments in accordance with the agreement for over a year. Hayes, 215 Mont. at 395, 697 P.2d at 1352. Here, in contrast, Karson acknowledged at most that the parties had seemingly reached a settlement of their claims. He did not admit that the Ruggiero email constituted a binding contract or that he had given Ruggiero authority to act as his agent. Section 28-2-903(l)(d), MCA.
f 89 As indicated, I do not agree with the Court’s reliance on Karson’s remarks to the McRaes. But since the Court is determined to use inadmissible evidence in an effort to uphold the Ruggiero email as an enforceable contract, I think certain communications left out of the Court’s Opinion ought to be acknowledged. At 4:24 p.m. on July 15, 2010, which is the day after the mediation, defense counsel (Guy Rogers) replied to Ruggiero’s email with the following email of his own:
Hi Jory [Ruggiero] and Bret [Engel]:
We have made a few modifications to the Settlement Memorandum of Understanding after you emailed us the draft late last night. I don’t think our modifications change the substance of the agreement. We are just trying to clarify several issues. If you have any problem with the modifications, please let me know.
*131 Jory, I also tried late this afternoon to give you a call to discuss several settlement issues. At your convenience, please give me a call. Thanks, Guy.
Ruggiero replied to Rogers’ email 42 minutes later with the following email:
Guy,
As we discussed by telephone this afternoon, Plaintiffs will work with Defendants to iron out the details of the settlement documentation, including Defendants’ modifications to the MOU. I will discuss the proposed changes to the MOU with co-counsel and my clients and talk with you about them over the course of the coming week. Thanks.
Jory
This correspondence-particularly defense counsel’s characterization of the “Settlement Memorandum of Understanding” as a “draft”-undermines the Court’s supposition that Ruggiero’s first email constituted the parties’ “signed, written agreement.” Section 26-1-813(3), MCA. Notably, on July 16, 2010, two days after the mediation, Ruggiero advised the District Court that the parties had reached a “tentative settlement agreement” (emphasis added), further undermining the Court’s tenuous efforts to uphold Ruggiero’s July 14 email as the final, legally binding expression of the parties’ intent.
¶90 The Comet brushes these facts aside, citing the District Court’s characterization of counsel’s language as “inartful and, in hindsight, imprecise.” Opinion, ¶ 39 (emphasis added). The fact remains, however, that our review here is de novo, Opinion, ¶ 19, and the terms “tentative” and “draft” constitute objective evidence that Ruggiero’s July 14 email was not the parties’ final agreement. Indeed, Rogers testified that “I used the word draft because we did it after 14 hours of mediation and we all got tired.” He admitted that “[w]e knew we had it to tweak, elaborate on a few issues ....” In light of this testimony, it seems to me that the Ruggiero email was not the parties’ “signed, written agreement” but, rather, was a “mediation-related communication” made in the process of reaching a final “signed, written agreement.” Section 26-1-813(3), MCA.
¶91 In any event, returning to the Court’s conclusion that the Statute of Frauds is inapplicable, I find it utterly implausible that a person’s (Karson’s) offhand expression of relief that a case seemingly has settled is enough to remedy (1) the absence of an agreement to conduct transactions by electronic means, § 30-18-104(2), MCA, and (2) the absence of written authorization for an agent to enter into an *132 agreement to sell real property on behalf of his principal, § 28-2-903(l)(d), MCA. If the sorts of remarks Karson made are enough to satisfy these statutory writing requirements, then these requirements are utterly meaningless.
5. No Consent
¶92 Having disposed of the Statute of Frauds, the Court considers whether the Kluvers consented to the Ruggiero email. The Court acknowledges that a party is bound to a settlement agreement if he or she has “manifested assent” to the agreement’s terms. Opinion, ¶ 33. The intentions of the parties, the Court notes, “are those disclosed and agreed to in the course of negotiations.” Opinion, ¶ 33 (emphasis added). One might wonder, however, how we could possibly consider what intentions the Kluvers “disclosed and agreed to in the course of negotiations” when, as the Court acknowledges elsewhere in its Opinion, “all of the evidence of conversations and conduct that occurred at the mediation was confidential under § 26-1-813, MCA.” Opinion, ¶ 58. The Mediation Confidentiality Statute prohibits us from doing precisely what the Court says is necessary to determine consent to the Ruggiero email, namely, examine the parties’ intentions “disclosed and agreed to in the course of negotiations.” Opinion, ¶ 33. The Court’s analysis in this regard is a blatant violation of the statute.
¶93 The Court’s reliance on Marta Corp. v. Thoft, 271 Mont. 109, 894 P.2d 333 (1995), is unavailing. First of all, Marta was decided four years before the Legislature enacted the Mediation Confidentiality Statute. See Laws of Montana, 1999, ch. 481, § 1 (“An Act Providing for Confidentiality in Mediation Proceedings; Creating a Mediation Privilege for Mediators and Parties to Mediation; Amending Sections 40-4-303 and 41-3-404; and Repealing Section 26-1-811, MCA.”). Accordingly, even if Marta could be interpreted as permitting us to consider evidence of conversations and conduct that occurred during a mediation, the decision has been abrogated by the Legislature’s subsequent enactment of § 26-1-813, MCA.
¶94 Secondly, Marta is factually distinguishable from the present case in any event. The settlement there was not pursuant to mediation. It was pursuant to a court-initiated settlement discussion on the first day of trial:
On May 12,1994, the morning of the scheduled trial, the court initiated settlement discussions, during which the parties agreed to general settlement terms. The court directed the parties’ attorneys to meet and prepare a stipulation for entry of an order. The court scheduled a meeting for 6:00 p.m. on May 19, 1994 for *133 entry of the order. On May 16, 1994, Respondents’ counsel sent a draft stipulation to Appellants’ counsel. On May 19, 1994, Respondents’ counsel sent Appellants’ counsel the final form of the stipulation: Appellants’ counsel signed and mailed the stipulation to the court and the parties that same day. He did not have client approval but anticipated their approval.... Appellants received the stipulation on May 23,1994 and they concluded that the written stipulation was unacceptable.
Marta, 271 Mont. at 111, 894 P.2d at 334 (paragraph break omitted). This Court held that Appellants were bound by the stipulation nonetheless, because
there were no conditions placed on Appellants’ acceptance of the settlement agreement. Appellants and Respondents were present and represented at the settlement discussion and therefore were party to the agreement on general terms. Although Appellants argue strenuously, after the fact, that the written stipulation did not meet their wishes and was unacceptable to them, they do not point to any specific instances wherein the written stipulation is contrary to what they agreed to at the May 12 settlement conference.
Marta, 271 Mont. at 113, 894 P.2d at 335. For obvious reasons, the court-initiated “settlement discussion” in Marta-which was not governed by a mediation privilege-is entirely distinguishable from the mediation proceeding in the present case-which is governed by a mediation privilege.
¶95 Ironically, while the Court criticizes the District Court for wrongly basing its decision on evidence of what occurred at the mediation, Opinion, ¶ 35, the Court then proceeds to base its own decision on the very same thing. Specifically, the Court points to the statement in Ruggiero’s email that it was “reviewed and approved” by the parties. Opinion, ¶ 35. Yet, the fact that the parties presumably all walked over to Ruggiero’s computer, reviewed what he had written, and approved it is “evidence of conversations and conduct that occurred at the mediation,” which “was confidential under § 26-1-813, MCA.” Opinion, ¶ 58. The Court’s Opinion is riddled with conflicts and contradictions. Furthermore, even if we could rely on the “reviewed and approved” sentence, it must not be forgotten that the Kluvers did not electronically sign the Ruggiero email. Ruggiero did-which brings us back to the question whether the Kluvers gave him authority to act as their agent. As discussed already, there is no evidence that the Kluvers did so.
*134 ¶96 Lacking any admissible evidence that the Kluvers consented to be bound by the Ruggiero email, the Court ultimately turns this requirement on its head. “A party to a settlement agreement is bound if he or she manifested assent to the agreement’s terms.” Murphy v. Home Depot, 2012 MT 23, ¶ 8, 364 Mont. 27, 270 P.3d 72 (emphasis added). The Court acknowledges this principle, Opinion, ¶¶ 31,33, yet then holds-citing Marta, an inapplicable precedent-that “there is nothing on the face of the MOU suggesting that the Kluvers did not intend to be bound by it,” Opinion, ¶ 35 (emphasis added). The dispositive question is whether the Kluvers manifested an intent to be bound, not whether they manifested an intent not to be bound. Murphy, ¶ 8.
6. Missing Terms
¶97 Having found the consent element satisfied, the Court turns to the next issue: essential terms. The Ruggiero email did not include many of the practical details and terms needed for its execution. As noted, Ruggiero himself characterized his email as a “tentative” settlement agreement, and defense counsel likewise characterized it as a “draft.” Rogers stated in an email to Ruggiero the next day: “We have made a few modifications to the Settlement Memorandum of Understanding after you emailed us the draft late last night.”
¶98 In order to remedy this problem, the Court relies on Hurly v. Lake Cabin Dev., LLC, 2012 MT 77, 364 Mont. 425, 276 P.3d 854. Opinion, ¶¶ 37-38. In that decision, we reversed the trial court and saved a contract based on the appellees’ waiver of the contract-formation problems at issue. Hurly, ¶ 29. There is no evidence of any such waiver of the lack-of-detail defects in the purported settlement agreement here, however. Kluvers dispute any notion of waiver. Accordingly, Hurly is inapposite.
7. Failure to Perform
¶99 Lastly, the parties failed to perform their duties within the 60-day period set forth in the Ruggiero email. To alleviate the problem of the District Court’s failure to make a finding of fact that would benefit Appellees’ argument in this regard, the Court invokes the doctrine of “implied findings.” Opinion, ¶ 41.1 am not persuaded that this doctrine is applicable here, where our review of the contract’s validity is de novo. Moreover, I am not persuaded that this doctrine can singlehandedly overcome the numerous problems going to the validity of the alleged contract at issue.
*135 8. The Court Undermines Its Analysis
¶ 100 Having concluded in Issue One that an enforceable settlement agreement exists, the Court is forced, in Issue Three, to deal with the District Court’s violations of the confidentiality requirements of § 26-1-813, MCA. The evidence admitted as a result of these violations undergirded the District Court’s conclusion that the Ruggiero email is a valid contract.
¶101 At the outset of its Issue Three analysis, the Court quotes portions of § 26-1-813, MCA, and recognizes that the statue provides a blanket confidentiality protection for mediation proceedings and all mediation-related communications and materials-such as conversations, position statements, offers, rejections, agreements, disagreements, files, records, and advice from counsel and the mediator. Opinion, ¶ 52; § 26-l-813(2)(a), (3), MCA. The Court recites the three statutory exceptions to the confidentiality protection: if disclosure is (a) required by statute, (b) agreed to by the parties and the mediator in writing, or (c) necessary to establish a claim on behalf of the mediator in a controversy between a party to the mediation and the mediator. Opinion, ¶ 52; § 26-1-813(5), MCA. The Court, somewhat ironically, states that it will apply a plain-language approach to interpreting the statute. Opinion, ¶¶ 53, 55. Finally, having stated these principles, the Court proceeds into its analysis. As will be seen, however, the Court’s holdings under Issue Three effectively obliterate the foundation of its holding under Issue One.
¶102 First, the Court takes the position that because a settlement agreement exists, the District Court did not err in admitting the Ruggiero email into evidence. Opinion, ¶ 55. Of course, without the mediation evidence, it would have been impossible for the District Court, and now this Court, to conclude that there was a valid settlement agreement in the first place. Indeed, the Kluvers did not sign a settlement agreement, and there is no evidence that Ruggiero had authority to bind the Kluvers-unless one first manufactures an exception to the plain language of § 28-2-903(l)(d), MCA, and then considers and draws inferences from inadmissible mediation-related communications and conduct.
¶103 Second, although the Court purports to adopt a strict reading of § 26-1-813, MCA, see Opinion, ¶¶ 53, 55-56, 59, the Court inexplicably cites In re Estate of Stukey, 2004 MT 279, ¶ 71, 323 Mont. 241, 100 P.3d 114, for the proposition that post-mediation communications are not covered by § 26-1-813, MCA, see Opinion, ¶ 55. While Stukey may indicate this, the virtually nonexistent reasoning in *136 that part of the Stukey opinion ignores the plain language of § 26-1-813(3), MCA, which states: “all mediation-related communications, verbal or written, between the parties ... are confidential.” The privilege expressly applies to “all” communications that are “mediation-related,” § 26-1-813(3), MCA, not just those that occur “during the course of the mediation proceeding,” Opinion, ¶ 55 (emphasis in original). Notably, in rejecting Appellees’ argument that “ministerial” communications are not covered by the mediation statute, the Court observes. that the proponents of § 26-1-813, MCA, “emphasized that mediation was a growing method of resolving disputes, founded on two key principles-that the parties feel free to speak their mind, and that their confidence will be maintained.” Opinion, ¶ 56. The Court further observes that “[b]ecause the statute is designed to promote a candid exchange, the participants must be assured that what they say will not be used against them through later court proceedings.” Opinion, ¶ 56. Given these policies, it makes no sense to exempt mediation-related communications that occur before or after the mediation proceeding itself. Certainly there is nothing in the actual language of the statute supporting such a distinction; to the contrary, the statute expressly applies to “all mediation-related communications.” Section 26-1-813(3), MCA (emphasis added). Stukey was wrongly decided and should be overruled, not followed, on this point.
¶104 Third, the Court determines that “communications” under § 26-1-813(3), MCA, include both statements and nonverbal conduct meant to inform (such as nodding). Opinion, ¶¶ 57, 58. Conversely, “smoking a cigarette” or “physical presence” at the mediation is not a “communication.” Opinion, ¶¶ 57, 58. Yet, if mere physical presence is not a communication-and I agree with the Court that it is not-then the Court’s “physical proximity” analysis under Issue One falls apart. Again, that analysis purports to supplant the statutory requirement of written authority by a principal granting his agent authority to sign a contract involving realty. Opinion, ¶¶ 27-29. The mere fact that the Kluvers were physically present with Ruggiero at the mediation proceeding could not, in and of itself, communicate to Ruggiero that he had authority to sign his email as their agent. There had to be some sort of communication of that authority. Mediation-related “communications,” however, are precisely what § 26-1-813(3), MCA, prohibits us from considering. They are confidential and privileged and, thus, cannot form the basis for establishing a valid contract in the first instance.
*137 ¶105 The Court concedes this point, explaining that
since the statute does not include any special provisions allowing disclosure of confidential information to prove or refute contract defenses, parties arguing for or against the enforceability of a contract created during mediation are quite limited in the evidence they can use to support their case. Some state legislatures have addressed this issue by explicitly providing exceptions to mediation confidentiality in their statutes when the enforceability of the mediated agreement is at issue. However, our Legislature conspicuously did not, and to carry out its purpose of encouraging mediation by ensuring strict confidentiality we are reluctant to allow exceptions. As stated above, it is not the job of this Court to insert into those statutes what the Legislature has chosen to omit.
Opinion, ¶ 59 (footnote omitted). In light of these principles, which I believe are correct, I simply cannot understand the Court’s willingness (indeed, apparent eagerness) to transform the Ruggiero email into a binding contract by creating exceptions to multiple statutory writing requirements and by relying on inadmissible evidence of various mediation-related communications and conduct-including the Kluvers’ supposed review of Ruggiero’s email during the mediation, their supposed approval of the email during the mediation, their supposed direction to Ruggiero to electronically sign the email on their behalf, and Karson’s post-mediation communication to the McCraes about the mediation and the assumed outcome of it. All of this evidence is confidential and privileged under § 26-1-813, MCA. If this Court would simply follow the strict-interpretation rule that it espouses, then the Kluvers’ communications and conduct during and after the mediation would be kept confidential, as the statute requires. While this might mean that Appellees “are quite limited in the evidence they can use to support their case,” Opinion, ¶ 59, that is a policy choice that the Legislature has made. It is not this Court’s job to overrule this policy decision in an effort to rescue the instant settlement agreement.
9. Conclusion of Contract Analysis
¶106 It is said that hard cases make bad law. The Court’s Opinion here proves the wisdom of that maxim. In my view, the Court has crafted a decision in the form of a house of cards so as to uphold a purported settlement agreement that has more holes in it than a dam made of Swiss cheese. It is not this Court’s job to make a contract for the parties; it is the parties’ obligation to do so. And to the extent they *138 have failed, this Court should simply say so and let the parties figure out how to deal with the consequences.
¶107 While the Court may view today’s decision as a good result in this case-believing as it does, I suspect, that the Kluvers were suffering from buyers’ remorse and were trying themselves to commit a “fraud”-the truth is that we have nonetheless sacrificed the law and set bad precedent to reach that result. The Court overreaches to hold that the Ruggiero email meets the prerequisites of the Uniform Electronic Transactions Act, complies with the Statute of Frauds, and satisfies the mutual-consent and essential-terms requirements. The Court’s decision to affirm is built on a house of cards-pull any one out, and the whole thing falls apart. I cannot agree with the Court’s analysis upholding the Ruggiero email as “a binding, enforceable settlement agreement.”[3] Opinion, ¶ 42.
IV. Harmless-Error Analysis
¶ 108 Although the Court concludes that the District Court erred by admitting evidence protected under § 26-1-813, MCA-notably, the Court does not specify exactly what that evidence is, other than to suggest that it includes “all of the evidence of conversations and conduct that occurred at the mediation” (Opinion, ¶ 58)-the Court then holds that this error was harmless. Opinion, ¶ 60. The reason: “[E]ven if the District Court had excluded the confidential information from the mediation, it would have arrived at the same conclusion.” Opinion, ¶ 60. This assertion is completely speculative. Indeed, it is reminiscent of the reputed powers of Johnny Carson’s famous Carnac the *139 Magnificent. The majority holds the District Court’s order to their collective heads and divines the trial judge’s mental processes. It cannot be done.
¶ 109 Perhaps what the Court means to say is that while the District Court erred, it ultimately reached the correct result. I agree that we could affirm on this basis, if it were true. The problem is that it is not true. If we exclude the “mediation proceedings,” which are confidential, § 26-l-813(2)(a), MCA, and “all mediation-related communications, verbal or written, between the parties,” which also are confidential, § 26-1-813(3), MCA, there is no evidence remaining that the Kluvers consented to be bound to the Ruggiero email. The Kluvers did not sign the email, and there is no admissible evidence that they gave Ruggiero authority to do so on their behalf. All we have is an email, “inartfully” drafted at the end of a daylong mediation proceeding, that is not signed by the party to be charged. It is invalid under § 28-2-903(l)(d), MCA, and it is our duty to so hold.
V. Conclusion
¶110 In closing, I would note that anyone reading the briefs and record in this case will recognize that the litigation and settlement attempt were nasty for any number of reasons. Nastiness, however, does not excuse what in my view were wholesale violations of the Mediation Confidentiality Statute by the District Court, and it does not justify this Court in constructing a binding settlement agreement in the manner described above-i.e., the house of cards-so as to affirm the District Court’s erroneous approach and decision.
¶111 Henceforth, those participating in mediations-mediators, counsel, and litigants alike-should approach the mediation process in this State knowing that the strict confidentiality provisions of § 26-1-813, MCA, can and will be nullified by judicial legerdemain. These individuals should be particularly wary about any mediation-related communications that do not occur “during the course of the mediation proceeding” itself. Opinion, ¶ 55 (emphasis in original). The Court has deemed those to be fair game. Even an offhand expression of relief that a mediation proceeding was a seeming success can be used to establish (1) assent to an email purporting to memorialize settlement terms, (2) an implicit agreement to conduct legal transactions by email, and (3) an implicit grant of authority to an agent to sign a contract involving realty on behalf of his principal.
¶112 In adopting § 26-1-813, MCA, the Legislature envisioned “a private, confidential, informal dispute resolution process in which an impartial and neutral third person, the mediator, assists disputing *140 parties to resolve their differences.” Section 26-1-813(1), MCA. Mediation is a “process,” not just one official “proceeding.” Throughout this “process,” the parties are supposed to “feel free to speak their mind,” knowing “that their confidence will be maintained.” Opinion, ¶ 56. The statute is designed to promote “a candid exchange,” and thus the participants must be assured “that what they say will not be used against them through later court proceedings.” Opinion, ¶ 56. With today’s decision, that vision and these assurances are out the window. The Court’s Opinion here does a serious disservice and damage to the mediation process.
¶113 I would reverse. I dissent.

 Since the Court has determined, nonetheless, to attribute dispositive significance to the “reviewed and approved” statement in the Ruggiero email, thus ignoring its own pronouncement that “all of the evidence of conversations and conduct that occurred at the mediation was confidential,” Opinion, ¶ 58,1 note that the Kluvers were not present and thus could not have approved the email when it was finalized. The record reflects that the Kluvers left the mediation site while the email was still being drafted.

 I am not going to embark on a lengthy discussion of the Court’s conclusion that Ruggiero electronically signed his email. Suffice it to say that some of the Court’s reasoning in this regard is dubious, particularly the Court’s observation that Ruggiero’s name appears in the “From” section of the email. Opinion, ¶ 26. As anyone familiar with junk email knows, the “From” field can be manipulated to make it appear that an email is coming from someone other than the true sender. In any event, an “electronic signature” is “an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record.” Section 30-18-102(9), MCA. I shall assume, for the sake of discussion only, that Ruggiero did in fact draft and transmit the email at issue, and that his clicking the “Send” button was an electronic “process” he executed “with the intent to sign the record.”

 Given this conclusion, I would not reach Issue Two. But assuming, for the sake of argument, that the Ruggiero email constitutes an enforceable contract, the Court makes the reasonable point that, in light of the “circumstances” cited at ¶¶ 47-48 of the Opinion, it makes no sense that the so-called “perpetual first option to purchase” was intended to be an option to purchase rather than a right of first refusal. What I find appalling is the “inartful” language used by the Kluvers’ counsel. The difference between an option to purchase and a right of first refusal has been clear in our caselaw since at least 1991. Opinion, ¶ 46 (citing Lee v. Shaw, 251 Mont. 118, 121, 822 P.2d 1061, 1063 (1991)). There is simply no plausible excuse for referring to the latter as a “perpetual first option to purchase.” Doing so was careless, to put it mildly. Worse still, it put the District Court and this Court in the untenable position of having to rely on parol evidence to make sense of a provision that easily could have been worded in accordance extant caselaw.
I also note here that I am not addressing the breaches of attorney-client privilege referred to at ¶ 61 of the Opinion. Suffice it to say that the Court’s reasoning is equally fallacious. Mediation confidentiality and the attorney-client privilege have taken an equally hard hit under the Court’s decision today.